ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
Dale W. Arnett
Winchester, Indiana



FILED

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 38S04-0905-CR-246

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

ALLAN M. SCHLECHTY,

*Appellee (Defendant below).*

Appeal from the Jay Superior Court, No. 38D01-0806-CM-095
The Honorable Joel D. Roberts, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 38A04-0810-CR-572

**March 24, 2010**

**Rucker, Justice.**

We conclude that a warrantless search of a probationer's property that is conducted reasonably, supported by a probation search term and reasonable suspicion of criminal activity, complies with the dictates of the Fourth Amendment.

**Facts and Procedural History**

On September 20, 2005, Allan M. Schlechty was convicted of burglary as a Class B felony. The trial court sentenced Schlechty to eight years imprisonment with six years suspended to probation, two conditions of which were that he "shall behave well" and not "commit any other criminal offense." Tr. Ex. 1. As an additional condition of probation, Schlechty agreed to submit to "reasonable warrantless searches" of his person and/or property by his probation officer in conjunction with other law enforcement officers. Id.

Responding to a report on the morning of June 10, 2008, that Schlechty was driving his car around a neighborhood: attempting to "pick up" a thirteen-year-old girl as she was on her way to a school bus stop, Tr. at 5; that he was "trying to make contact with her waiving [sic] at her[,]" Tr. at 6; that he had told the young girl "to get into a car[,]" Tr. at 55; that the frightened young girl ran away and called her mother and grandmother by cell phone as Schlechty told her to "come here or come back here[,]" Tr. at 59; and that the day before on June 9, 2009, the young girl had observed Schlechty and "she was extremely scared, [and] nervous about someone trying to get her into the car[,]" Tr. at 54, Jay County Probation Officer Ron May with the assistance of State Trooper Jeremy Woods and Portland Police Officer James Baughman confronted Schlechty and conducted a warrantless search of his car. The search revealed a green leafy substance, later identified as marijuana, along with drug paraphernalia. Tr. at 43. In consequence, the State charged Schlechty with possession of marijuana as a Class A misdemeanor. There is no indication in the record whether Schlechty was also charged with a probation violation.

Schlechty filed a pre-trial motion to suppress the evidence contending that the items taken from his vehicle were illegally seized. Schlechty did not challenge the validity of his terms of probation regarding his submission to reasonable and warrantless searches of his person and/or property; rather he argued the search itself was unreasonable. After a hearing and

2

declaring that the "State has the burden of proving that a warrantless search of a probationer was a probation search and not an investigatory search" (citing <u>Allen v. State</u>, 743 N.E.2d 1222 (Ind. Ct. App. 2001), <u>trans. denied</u>) the trial court granted the motion concluding in part:

> While the authorities were conducting an investigation into the Defendant's possible inappropriate interaction with a minor female child, there was no evidence that the child ever entered the Defendant's vehicle or that any property of the female child was likely to be found in the vehicle. The Court thus concludes that even after applying the lower standard applicable to a probation search, the State of Indiana has not presented any specific and articulable facts from which it could be concluded that there was reasonable suspicion that a search of the Defendant's vehicle was necessary under the regulatory scheme of probation enforcement.

Appellant's Br. at 20. The State appealed. And in an unpublished memorandum decision a divided panel of the Court of Appeals affirmed the judgment of the trial court. <u>State v. Schlechty</u>, No. 38A04-0810-CR-572 (Ind. Ct. App. Feb. 12, 2009). Having previously granted transfer, we now reverse the trial court's judgment.

**Discussion**

Citing <u>Griffin v. Wisconsin</u>, 483 U.S. 868 (1987) the State argues, "[t]he probation officer had sufficient information to search Defendant's car." Appellant's Pet. to Trans. at 3. Schlechty counters "the instant case is easily distinguishable from <u>Griffin</u>." Br. in Resp. to Pet. to Trans. at 2. Both the Fourth Amendment to the United States Constitution[1] and Article I, Section 11 of the Indiana Constitution[2] require in general that searches should be conducted

---

[1] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." This provision applies to the states through the Fourteenth Amendment. U.S. CONST. amend. IV; <u>Krise v. State</u>, 746 N.E.2d 957, 961 (Ind. 2001).

[2] Article I, Section 11 of the Indiana Constitution is nearly identical to the Fourth Amendment and provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause,

pursuant to a warrant supported by probable cause. And both this jurisdiction and the federal courts have recognized various exceptions to the warrant requirement. But this Court has consistently held, "[n]otwithstanding the textual similarity of Article I, § 11 of the Indiana Constitution to that of the federal Fourth Amendment, Section 11 is interpreted separately and independently from Fourth Amendment jurisprudence." State v. Washington, 898 N.E.2d 1200, 1205-06 (Ind. 2008) (citing Mitchell v. State, 745 N.E.2d 775, 786 (Ind. 2001)). In this case neither party tells us whether it is advancing a federal or state constitutional claim. However, because both sides rely heavily on Griffin, we address the facts here under federal Fourth Amendment jurisprudence only and express no opinion on whether the result would be the same under Article I, § 11 of the Indiana Constitution.

In Griffin, the United States Supreme Court upheld the constitutionality of a warrantless search performed by a probation officer pursuant to a state regulation that authorized such searches on the basis of reasonable suspicion and articulated factors to be considered in determining the existence of reasonable suspicion. See 483 U.S. at 872-80. The Court concluded that the "special needs" of the probationary system, particularly the need to supervise probationers closely, justified warrantless searches based on reasonable suspicion rather than probable cause. See id. at 875 (noting "[s]upervision, then, is a 'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large."). Accordingly, the Court determined that the search of the probationer's residence was reasonable within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers. Id. at 880.

Although the search in Griffin was executed as part of a state regulatory scheme, a number of federal circuits have held that 'reasonableness' can also be established by narrowly tailored restrictions included within a probation agreement. See, e.g., United States v. Wryn, 952 F.2d 1122, 1124 (9th Cir. 1991) ("[H]ad the warrantless search of the probationer Wryn's home been authorized by either Montana state law or by Wryn's probation agreement we would consider the search 'reasonable' under the [F]ourth amendment."); United States v. Giannetta,

---

supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." IND. CONST. art. I, § 11.

4

909 F.2d 571, 575 (1st Cir. 1990) (noting, "we do not read Griffin as approving only probation searches conducted pursuant to a legislative or administrative framework[] [and that] [s]imilar guidance and constraints . . . are provided where . . . a sentencing judge narrowly tailors the need for and scope of any probation search conditions to the circumstances of an individual case."); United States v. Schoenrock, 868 F.2d 289, 293 (8th Cir. 1989) (remarking that "[u]nlike the general search terms approved in Griffin, a sentencing judge is able to narrowly tailor probation terms to fit the needs of a particular individual.") (citation omitted).  We agree with this view and conclude that the condition of Schlechty's probation that he submit to reasonable warrantless searches of his person and/or property by the probation officer in conjunction with law enforcement officers, represents a reasonable and valid restriction upon Schlechty's liberty.  In addition we also observe that Griffin has grounded much of this jurisdiction's understanding of federal jurisprudence in this area.  See, e.g., George v. State, 901 N.E.2d 590, 594 n.3 (Ind. Ct. App. 2009), trans. denied, (citing Griffin for the proposition that "the so-called 'special needs' doctrine, relieves law enforcement of both [warrant and probable cause] requirements."); Bonner v. State, 776 N.E.2d 1244, 1249 (Ind. Ct. App. 2002), trans. denied, (citing Griffin for the proposition that "the 'special needs' of the probation system may require warrantless searches."); Purdy v. State, 708 N.E.2d 20, 22 (Ind. Ct. App. 1999) (citing Griffin for the proposition that "[t]he State's operation of the probation system presents a special needs situation beyond the normal need for law enforcement that justifies such a departure from the usual warrant and probable cause requirements.").

However, in United States v. Knights, 534 U.S. 112 (2001) the United States Supreme Court expanded its holding in Griffin by declaring that searches performed in compliance with a search provision contained within a valid probation agreement may be constitutional even if they were not "conducted by a probation officer monitoring whether the probationer is complying with probation restrictions."  Id. at 117.  In Knights, the defendant was a probationer who challenged the constitutionality of the search of his home without a warrant.[3]  As a condition of

---

[3] In pertinent part the facts revealed that a detective suspected that defendant Mark James Knights was involved in several acts of vandalism and arson against Pacific Gas & Electric because the crimes coincided with a complaint for theft of services that PG&E filed against Knights and with PG&E's termination of Knights' electric services.  After observing PG&E padlocks and various explosive

probation, the defendant had signed a document that provided for police access to his "person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant for arrest or reasonable cause by any probation officer or law enforcement officer." Id. at 114. The defendant argued that the search was unconstitutional because police did not have a "special need" beyond normal law enforcement to support the warrantless search. Id. at 117-18. In essence the defendant argued the search was invalid because it was conducted for "investigatory" rather than "probationary" purposes. Id. at 116. A unanimous Court rejected this argument and concluded that the probationer's acceptance of a clear and unambiguous search condition "significantly diminished [the probationer's] reasonable expectation of privacy." Id. at 119-20. The Knights court expressly declined to reach the question of whether "acceptance of the search condition constituted consent in the Schneckloth [v. Bustamonte, 412 U.S. 218 (1973)][4] sense of a complete waiver of his Fourth Amendment rights . . . ." Knights, 534 U.S. at 118. Instead, the Court concluded that the search was reasonable under its general Fourth Amendment approach of examining the totality of the circumstances "with the probation search condition being a salient circumstance." Id. Ultimately the Court determined that the warrantless search of the probationer's home was reasonable within the meaning of the Fourth Amendment because it was authorized by a condition of probation and supported by reasonable suspicion. Specifically the Court held "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." Id. at 121.[5]

---

materials in the back of a suspected accomplice's truck, which was parked at Knights' apartment complex, the detective decided to search Knights' apartment. 534 U.S. at 114-16.

[4] Holding, "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. 412 U.S. at 248.

[5] In Samson v. California, 547 U.S. 843 (2006), the Supreme Court extended the principle of Knights to uphold a warrantless search of a parolee even in the absence of reasonable suspicion, where the parolee had signed a parole agreement that allowed parole officers or other peace officers to search the parolee "with or without a search warrant and with or without cause." Id. at 846. The Court noted "[t]hat some States and the Federal Government require a level of individualized suspicion," and strongly implied that

Knights and Griffin represent different ways in which a probation search may be analyzed. See United States v. Herndon, 501 F.3d 683, 688 (6th Cir. 2007) (noting that "Griffin and Knights represent two distinct analytical approaches under which a warrantless probationer search may be excused.") (citation omitted); United States v. Freeman, 479 F.3d 743, 746 (10th Cir. 2007) (observing that Griffin and Knights are "two exceptions to the Fourth Amendment's warrant requirement in the context of [probationer] searches."); see also United States v. Amerson, 483 F.3d 73, 78 (2d Cir. 2007), cert. denied, (noting that the federal circuits have "adopted two somewhat different approaches" to suspicionless searches of probationers; "a balancing test that accounts for the totality of the circumstances . . . [and] the 'special-needs' test."); United States v. Williams, 417 F.3d 373, 378 (3d Cir. 2005) ("Knights [] clearly offers a second and discrete path to a legitimate search when a probationer has agreed to a search condition, and that path involves applying ordinary Fourth Amendment principles rather than any sort of analysis of special needs.") (internal citation omitted).  In sum, a warrantless probation search under Griffin may be justified on the basis of reasonable suspicion to believe a probation violation has occurred because, among other things, supervision of probationers is necessary to ensure that probation restrictions are in fact observed, and that the community is not harmed by the probationer being at large.  Griffin, 483 U.S. at 873-75.  By contrast, under Knights, even if there is no probationary purpose at stake, a warrantless search may be justified on the basis of reasonable suspicion to believe that the probationer has engaged in criminal activity and that a search condition is one of the terms of probation.  Knights, 534 U.S. at 122.

Turning to the facts in the case before us, we first observe that whether the warrantless search of Schlechty's car was permissible under the Griffin reasoning and line of authority is at least a close call.  For example the trial court noted that it had "serious reservations about whether or not this was a probationary search, in other words, was it done as a part of the regulatory scheme of probation enforcement as opposed to a substitut[e] for the officers obtaining a warrant to search the defendant's vehicle."  Tr. at 82.  This is a respectable position under Griffin.  But as previously discussed, Knights puts this distinction to rest.  The questions

in such jurisdictions a suspicionless search would remain impermissible. Id. at 855. Thus it appears that at least parolee searches are an example of instances in which the contours of a federal constitutional right are determined, in part, by the content of state law.

are whether the officers had reasonable suspicion to believe that Schlechty was engaged in criminal activity and whether there was a search condition included in his terms of probation. As for the search condition the record is clear. Schlechty signed an "Order On Probation," the terms and conditions of which included paragraph 10, which reads in pertinent part, "[y]ou shall permit the Probation Officer, in conjunction with other law enforcement officers, to visit you at reasonable times at your home or elsewhere, and to make reasonable inquiry into your activities while under probation supervision, and you *shall submit to reasonable warrantless searches of your person and/or property by such officers.*" (emphasis added). Tr. Ex. 1. Schlechty acknowledged that he read the order and had been furnished a copy. Id. However, the trial court determined that apart from whether the search of Schlechty's car was investigatory rather than probationary, it was nonetheless unreasonable because the State presented no specific articulable facts from which it could be concluded there was reasonable suspicion that the search was necessary. See Appellant's Br. at 20.

It appears to us that the trial court may have conflated two different concepts: the "reasonableness" of the search under the Fourth Amendment on the one hand, versus "reasonable suspicion" to support the search on the other. As to the former, we agree that all government searches, whether or not conducted pursuant to voluntary consent, must be "reasonable." For example the Fourth Amendment would not condone the indiscriminate ransacking of a probationer's home at all hours, or the pumping of his or her stomach, simply because a probation term included a search condition. See Kopkey v. State, 743 N.E.2d 331, 336 (Ind. Ct. App. 2001), trans. denied, (citing Rochin v. California, 342 U.S. 165, 172 (1952) for the proposition that pumping of defendant's stomach "shocked the conscience" and violated Fourteenth Amendment's Due Process Clause). But here, we disagree there was anything unreasonable about the search of Schlechty's car. It was apparently used or attempted to be used as an instrument to lure a young girl. And at the time of the search, Schlechty was not present in the car. Thus our inquiry focuses on the "reasonable suspicion" to believe Schlechty engaged in criminal activity thereby supporting the warrantless search.

Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but it still requires at least a

minimal level of objective justification and more than an inchoate and unparticularized suspicion or "hunch" of criminal activity. Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000). In this case, Probation Officer May's decision to search Schlechty's car, with the assistance of Trooper Woods and Officer Baughman, was based on a provision in Schlechty's terms of probation to "behave well." Indeed when specifically asked if he thought Schlechty "possibly committed a criminal offense" Probation Officer May responded "I don't know if he committed a criminal offense" but "[b]ehaving well is part of the rules of the Jay Circuit Court." Tr. at 30.[6]

The United States Supreme Court has consistently determined that an officer's subjective motivation for a search is measured against an objective standard of reasonableness. See Scott v. United States, 436 U.S. 128, 137-38 (1978) (Under the Fourth Amendment "the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him . . . . [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action."); Brigham City v. Stuart, 547 U.S. 398, 404 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.' The officer's subjective motivation is irrelevant.") (internal citations omitted) (emphasis and alteration in original); see also Graham v. Connor, 490 U.S. 386, 397 (1989) ("[O]ur prior cases make clear" that the subjective motivation of the individual officer "has no bearing on whether a particular seizure is 'unreasonable' under the Fourth Amendment."). The record shows that as reported by the thirteen-year old alleged and

_____

[6] A requirement that the probationer "behave well" apparently has its roots in the predecessors to our current probation statute. See, e.g., Ind. Code § 35-7-1-1 (West 1976) (granting trial court authority to suspend a defendant's sentence "for such offense if he or she shall thereafter behave well . . . ."); Acts 1907, ch. 236 § 1 at 447-448 (outlining the trial court's authority to order suspended sentences and declaring in part the order "shall only be effective and operate during the good behavior of such person . . . ."). Although no such language has appeared in the probation statute since it was recodified in 1977, "good behavior" or "behave well" has continued to survive as a condition of probation imposed by many of this State's trial courts. But we have long held that "good behavior" as a term or condition of probation is equivalent to "lawful conduct." Hoffa v. State, 267 Ind. 133, 368 N.E.2d 250, 252 (1977); see also Ashley v. State, 717 N.E.2d 927, 928 (Ind. Ct. App. 1999) (declaring defendant violated the terms and conditions of his probation to behave well by "committing the new criminal offenses."). In this case, the inclusion of "good behavior" – or more precisely a probation condition that Schlechty "behave well"– along with the provision that he not "commit any other criminal offense" was redundant and unnecessary.

potential victim, Schlechty's conduct implicated at least two possible criminal offenses: stalking,[7] and attempted confinement.[8] Thus, viewed objectively, the officers had reasonable suspicion to believe criminal activity had occurred even though their subjective states of mind may have suggested otherwise.

**Conclusion**

The warrantless search of Schlechty's car was supported both by reasonable suspicion to believe that Schlechty engaged in criminal activity and a search condition contained in his terms of probation. Also, the search itself was not conducted unreasonably. We therefore conclude that the search comported with the dictates of the Fourth Amendment. The trial court thus erred in suppressing the evidence seized thereby. The judgment of the trial court is reversed and this cause is remanded.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.

---

[7] See Ind. Code § 35-45-10-1 (defining stalking as a "knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened."); see also Ind. Code § 35-45-10-2 (defining harassment as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress.").

[8] See Ind. Code § 35-42-3-3 (declaring in pertinent part, "A person who knowingly or intentionally . . . removes another person by . . . threat of force, from one (1) place to another; commits criminal confinement.").