Robert SEGAR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1003–CR–269.

Court of Appeals of Indiana.

Dec. 1, 2010.

Suzy St. John, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Robert Segar was convicted, following a bench trial, of possession of marijuana, a Class A misdemeanor. On appeal, he raises two issues, of which we find the following restated issue dispositive: whether the trial court abused its discretion by admitting into evidence marijuana obtained following an investigatory stop and detention of Segar. Concluding in the affirmative because Segar's detention was not supported by the requisite reasonable suspicion, we reverse.

### Facts and Procedural History [1]

On October 15, 2009, Officer Carl Grigsby of the Indianapolis Metropolitan Police Department was dispatched to 3179 Normandy Road on a report of a "burglary in progress." Transcript at 8. The dispatch contained a description of the suspect as a "white male wearing either a dark shirt or a dark coat." Id. The report of a burglary and the description of the suspect were provided to police by an anonymous telephone tip. The police department "tried to find out who [the tipster] was, but the phone line went dead and control couldn't get back to them." Id. at 14.

While in the vicinity of 3179 Normandy Road, Officer Grigsby saw Segar, a white male, walking northbound in the middle of the street and saw he was wearing a dark coat. Officer Grigsby stopped and detained Segar, whom he recognized because he had "seen him before." Id. at 9. Segar was "a little upset" that he was being stopped, but was otherwise cooperative. Id. at 14. Officer Grigsby also placed Segar in handcuffs, even as Segar continued to be nonthreatening, cooperative, and made no furtive movements. Officer Christopher Frazier arrived on the scene and saw that Segar was already handcuffed.

The officers obtained Segar's identifying information and learned he was "wanted in questioning on some burglaries in the area." Id. at 19. However, there were no warrants for Segar's arrest. Officer Grigsby then called the office of an IMPD burglary detective, whose personnel "stated that they were busy in the office and ... asked if [the officers] could transport [Segar] to their office." Id. at 10. Officer Frazier then conducted a patdown search of Segar's outer clothing, pursuant to standard protocol for officer safety which called for a patdown prior to placing any suspect in a police car. During the patdown, Officer Frazier noticed a bulge in Segar's left coat pocket that, based on his training and experience, felt like marijuana. Officer Frazier reached in and removed a clear plastic baggie, which contained a green leafy substance that testing later showed to be marijuana. Officer Grigsby placed Segar in the police car and transported him to the detective's office, where he was cleared of the burglary incident but placed under arrest for the marijuana.

The State charged Segar with possession of marijuana, a Class A misdemeanor.

---

1. We heard oral argument on November 8, 2010, at the Court of Appeals Courtroom in Indianapolis.

A bench trial was held, at which Segar objected to the admission of the marijuana on the grounds that he was unlawfully stopped and detained and the resulting search of his pocket therefore violated the Fourth Amendment to the U.S. Constitution and Article 1, section 11 of the Indiana Constitution. The trial court overruled Segar's objection, found him guilty as charged, and sentenced him to 180 days in jail with 178 days suspended. He now appeals.

## Discussion and Decision

### I. Waiver of Issue

■■■ The State initially argues Segar failed to make a timely objection to admitting the marijuana and therefore waived his claim of error. Our supreme court recently clarified that when a defendant challenges the admission of allegedly unlawfully seized evidence, "[a] contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal." *Brown v. State*, 929 N.E.2d 204, 207 (Ind.2010). Stated somewhat differently, "a claimed error in admitting unlawfully seized evidence at trial is not preserved for appeal unless an objection was lodged at the time the evidence was offered." *Id.* at 205.

The record shows Segar did object at the time the State moved to admit Exhibit 1, the marijuana, into evidence. *See* Tr. at 23. However, the State argues this was not a timely objection because both officers had already testified regarding their discovery of marijuana on Segar's person. The State contends their testimony already provided sufficient evidence to convict Segar and his objection therefore came too late. The State directs us to *Lundquist v. State*, 834 N.E.2d 1061 (Ind. Ct.App.2005). There, we concluded the defendant "failed to object to 1) testimony concerning the deputies' discovery, search, and collection of the marijuana, and 2) the

State Police Chemist's testimony that the plant material collected by the deputies was marijuana with a weight of 182 grams." *Id.* at 1067. Under those circumstances, the defendant's objection to the admission of the actual marijuana was not a timely objection and his claim of error was waived. *Id.*

Here by contrast, the officers testified only that the green leafy substance recovered from Segar's pocket "resembled marijuana," tr. at 11 (Officer Grigsby), or was "believed to be marijuana," *id.* at 22 (Officer Frazier). Neither officer stated unequivocally that the plant material collected from Segar was in fact marijuana, as would have been required to prove Segar's conviction beyond a reasonable doubt absent additional evidence. Rather, the officers' testimony regarding the "alleged marijuana," tr. at 11, 16, 26, was foundational in nature for the purpose of linking Segar to the physical evidence. Segar was not required to object to that foundational testimony, but made a timely objection when the State moved to admit Exhibit 1, the actual marijuana, into evidence. For the same reasons, the actual marijuana was not cumulative of the testimony already presented; its admission affected Segar's substantial rights and cannot be deemed harmless. *See* Ind. Trial Rule 61. Thus, we conclude Segar's claim is not waived and proceed to its merits.

### II. Standard of Review

When a defendant appeals from a completed trial, our standard of review is whether the trial court abused its discretion by admitting the allegedly unlawfully obtained evidence at trial. *Cole v. State*, 878 N.E.2d 882, 885 (Ind.Ct.App.2007). In making this determination, we do not reweigh the evidence and we consider conflicting evidence in a light most favorable to the trial court's ruling. *Meredith v.*

*State,* 906 N.E.2d 867, 869 (Ind.2009). We "consider[ ] afresh any legal question of the constitutionality of a search or seizure." *Id.*

### III. Investigatory Stop

Consistent with the Fourth Amendment, an investigatory stop of a citizen by an officer is permitted where the officer has a reasonably articulable suspicion of criminal activity. *Lampkins v. State,* 682 N.E.2d 1268, 1271 (Ind.1997) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)), *modified on reh'g on other grounds,* 685 N.E.2d 698. In reviewing the question of reasonable suspicion, courts look to the "totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (quotations omitted). "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." *State v. Schlechty,* 926 N.E.2d 1, 7 (Ind.2010) (citing *Illinois v. Wardlow,* 528 U.S. 119, 123–24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). The State has the burden of proving that an investigatory stop, as an exception to the general warrant requirement of the Fourth Amendment, is supported by reasonable suspicion. *See Burkett v. State,* 736 N.E.2d 304, 306 (Ind.Ct.App.2000).

When police respond to a telephone tip of criminal activity, the existence of reasonable suspicion "is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the 'totality of the circumstances....'" *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (citation omitted). "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* Thus, "as a general rule, an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid *Terry* stop." *Lampkins,* 682 N.E.2d at 1271. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (citations and quotation omitted). "[H]owever, there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id.* (quotation omitted).

> [P]recedent dictates that for an anonymous tip to constitute the reasonable suspicion necessary for a valid investigatory stop, at least two conditions must be met. First, significant aspects of the tip must be corroborated by the police. Such corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility. Second, an anonymous tip, if it is to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior.

*Sellmer v. State,* 842 N.E.2d 358, 361 (Ind. 2006) (quotations, citations, and alteration omitted).

■ Here, Officer Grigsby stopped and handcuffed Segar based on a tip from an anonymous caller whose identity was never ascertained. So far as the record reveals, the information provided by the tipster was limited to the following: 1) a burglary was "in progress" at 3179 Normandy Road; and 2) a white male wearing a dark shirt or dark coat was allegedly involved in the burglary. Because this description was quite generic and lacking in detail, the officers had little information upon which to base a particularized suspicion of Segar.

Turning to the reliability of the information, while Segar matched the general description of the suspect, that description provided only facts observable by the general public and no indication of whether the tipster had inside knowledge. If the tipster's assertion of a burglary in progress had been corroborated, there would have been some reason to believe the tipster had inside knowledge potentially linking Segar to the illegality. However, there is nothing in the record to indicate whether a burglary actually happened at 3179 Normandy, let alone whether police verified the report before stopping Segar. Not only was the tipster anonymous and unknown to police, the tipster apparently hung up the phone when police or dispatchers attempted to ascertain his or her identity, which casts further doubt on the tipster's knowledge or veracity. In these circumstances, the anonymous telephone tip had a very low degree of reliability as to whether Segar was involved in illegal activity. See J.L., 529 U.S. at 272, 120 S.Ct. 1375 (noting the relevant inquiry is whether a tip is "reliable in its assertion of illegality, not just in its tendency to identify a determinate person"); State v. Glass, 769 N.E.2d 639, 643 (Ind.Ct.App.2002) (noting a telephone tip, unlike a face-to-face encounter, provides no opportunity to assess credibility through facial expressions and body language), trans. denied.

■ Looking to circumstances aside from the anonymous tip, Segar's observed actions before and during the stop were not suspicious. Nothing in the record indicates criminal activity was more likely based on the time of day or the character of the neighborhood. Cf. Johnson v. State, 659 N.E.2d 116, 119 (Ind.1995) (noting reasonable suspicion is more easily attained at night in a high crime area). While the State points to Segar's presence near the scene of the alleged burglary, not only is it uncertain whether a burglary actually occurred or not, the record is silent as to whether few or many people were present in the vicinity, and without that information it is unclear whether Segar's location would be cause for suspicion. After the officers detained Segar, they learned he was wanted for questioning in relation to previous burglaries in the area. However, the reasonableness of official suspicion "must" be measured by what officers knew before, not after, conducting an investigatory stop. J.L., 529 U.S. at 271, 120 S.Ct. 1375. While an investigatory stop may be based on information known to a law enforcement organization as a whole, Glass, 769 N.E.2d at 643, there is no indication that anyone in law enforcement made a connection before Segar was stopped between the present report of a burglary and whatever facts warranted Segar's questioning regarding previous burglaries.

Considering the totality of the circumstances, the officers lacked reasonable suspicion to justify the investigatory stop and detention of Segar. See J.L., 529 U.S. at 271, 120 S.Ct. 1375 (holding reasonable suspicion lacking where anonymous telephone tip reported black male wearing plaid shirt and standing at certain bus stop was carrying a gun; tipster was unknown and did not explain how he knew about gun); L.W. v. State, 926 N.E.2d 52, 59–60 (Ind.Ct.App.2010) (concluding reasonable suspicion lacking where named caller with untested reputation reported

"tall black male wearing a black shirt and black shoes" as burglary suspect and such juvenile was found in vicinity of burglary; description "lacked sufficiently distinguishing characteristics to provide a basis for meaningful corroboration") (alteration omitted), *reh'g denied; Berry v. State,* 766 N.E.2d 805, 810 (Ind.Ct.App.2002) (concluding reasonable suspicion lacking where anonymous caller reported past incident involving firearm and gave description of suspect's vehicle but no predictions of future behavior for officer to corroborate), *trans. denied; Washington v. State,* 740 N.E.2d 1241, 1246 (Ind.Ct.App.2000) (concluding anonymous telephone tip of impaired motorist, absent any independent indicia of reliability or officer confirmation of erratic driving, did not give rise to reasonable suspicion supporting *Terry* stop), *trans. denied.* Because the stop and detention violated Segar's rights under the Fourth Amendment, the trial court abused its discretion by admitting the marijuana discovered as a result. *See Johnson,* 659 N.E.2d at 120 (concluding where initial stop was unlawful, evidence discovered during subsequent search of person had to be suppressed). We are therefore compelled to reverse Segar's conviction.

### Conclusion

The investigatory stop and detention of Segar were not supported by reasonable suspicion, and the trial court therefore abused its discretion by admitting into evidence over his objection the marijuana officers discovered during the subsequent search. Segar's conviction of possession of marijuana is reversed.

Reversed.

MAY, J., and VAIDIK, J., concur.