
FILED
Feb 27 2015, 10:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Thomas P. Keller
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyrone Shelton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 27, 2015

Court of Appeals Case No.
71A03-1408-CR-309

Appeal from the St. Joseph Superior
Court.

The Honorable Jane Woodward
Miller, Judge.

Cause No. 71D01-0701-FC-22

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Tyrone D. Shelton, Jr. (Shelton), appeals his conviction of Count I, possession of marijuana, a Class A misdemeanor, Ind. Code § 35-48-4-11 (2006); Count II, possession of cocaine, a Class C felony, I.C. § 35-48-4-6(b)(1) (2006); and Count III, possession of a Schedule I controlled substance, a Class D felony, I.C. § 35-48-4-7(a) (2006).

[2] We affirm.

## ISSUE

[3] Shelton raises one issue on appeal, which we restate as follows: Whether the trial court abused its discretion by admitting evidence that was seized during the course of a warrantless search.

## FACTS AND PROCEDURAL HISTORY

[4] In 2004, following his conviction of Class A felony cocaine possession, Shelton received a twenty-year sentence. As an alternative to incarceration in the Indiana Department of Correction (DOC), the trial court ordered Shelton to serve his sentence in the DuComb Community Corrections of St. Joseph County (Community Corrections) in South Bend, Indiana. As a condition of his home detention/work release, Shelton was outfitted with an electronic monitoring device and required to report daily to his case manager, Judi Ross (Case Manager Ross).

[5] On July 7, 2006, Shelton entered into a contract with Community Corrections, whereby he agreed to the terms governing his home detention. In part, Shelton "[c]onsent[ed] to allow [Community Corrections] staff and/or law enforcement officers to enter [his] residence at any time, without prior notice or warrant, to make reasonable inquiry into the activities of the residents of the home or assist in investigations of rule violations." (State's Exh. 1). He further "[a]gree[d] to submit to searches of person, residence, vehicle, or personal property at any time by staff or law enforcement officers." (State's Exh. 1). By signing the contract, Shelton acknowledged that his failure to abide by Community Corrections' regulations could result in the revocation of his placement in order to serve the remainder of his sentence in the DOC.

[6] On November 3, 2006, the Metro Special Operations Section—*i.e.*, the narcotics unit for St. Joseph County—received an anonymous tip on the Crime Stoppers hotline that "Shelton was talking about having some marijuana in his house, and he was on house arrest or something like that, and the marijuana supposedly was stolen from a South Bend police car." (Transcript p. 15). The information was passed on to Officer Charles Flanagan (Officer Flanagan) of the South Bend Police Department for further investigation.

[7] A day or two earlier, Officer Flanagan learned that marijuana had, in fact, been stolen from a squad car. The theft was not released to the public, and only a few police officers were even aware of the incident. Officer Flanagan was privy to the information because he worked as a K-9 handler, and the stolen marijuana was intended to be used for training the drug-sniffing dogs. Because

the informant had specifically mentioned Shelton's house arrest through the DuComb Center, Officer Flanagan contacted Community Corrections, and Case Manager Ross verified that Shelton was serving a sentence on home detention. Case Manager Ross also stated that Shelton had signed a consent to have his house searched at any time, so she offered to do a surprise inspection.

[8] At approximately 2:30 p.m., Case Manager Ross—along with Officer Flanagan, his K-9 partner Dixie (K-9 Dixie), and a few other officers—arrived at Shelton's home, located at 55185 Melrose Avenue in South Bend. Case Manager Ross explained the purpose of the search to Shelton, and Shelton denied that there were any narcotics in the home. Officer Flanagan then escorted K-9 Dixie throughout the house and the attached garage. K-9 Dixie, who was trained to detect eight types of drugs, did not indicate that any drugs were present inside the house. Once in the garage, K-9 Dixie detected an odor and "worked her way back to a cooler . . . and she started alerting on the cooler by scratching at it[,] knocking it over." (Tr. p. 112).

[9] Inside the cooler, Officer Flanagan found a plastic grocery bag containing seven "bags of a green leafy substance which I immediately recognized to be marijuana, and there were two smaller bags. One was an off-white substance, and another one was a couple of pills." (Tr. p. 112). There was also a digital scale in the cooler. A field test confirmed that the leafy substance was marijuana, but the officers were advised not to arrest Shelton until after the evidence could be submitted for chemical and fingerprint analyses.

Further testing confirmed that the bag of white powder consisted of 4.04 grams of cocaine. The three pills were identified as Ecstasy (MDMA) tablets and had a net weight of 0.92 grams. The marijuana weighed a total of 428 grams. In addition, a fingerprint analyst concluded that two latent fingerprints found on two of the clear plastic marijuana bags were left by Shelton, and one of the fingerprints found on the plastic grocery bag contained "similarities in the pattern, in the flows, to Mr. Shelton. But it came short of having a sufficient amount of minutia or detail to make an identification." (Tr. p. 150).

On January 25, 2007, the State filed an Information charging Shelton with Count I, possession of marijuana, a Class D felony, I.C. § 35-48-4-11 (2006); Count II, possession of cocaine, a Class C felony, I.C. § 35-48-4-6(b)(1) (2006); and Count III, possession of a Schedule I controlled substance, a Class D felony, I.C. § 35-48-4-7(a) (2006). On April 1, 2014, Shelton filed a motion to suppress "any and all items of evidence seized . . . on the grounds that said seizure was done without warrant and beyond the terms of his contract with [Community Corrections]." (Appellant's App. p. 89). On April 4, 2014, the trial court held a hearing and denied Shelton's motion.

On July 28 and 29, 2014, a jury trial was conducted. At the close of the evidence, the jury returned a verdict of guilty on all Counts.[1] On August 26,

---

[1] Shelton was initially charged with Count I, possession of marijuana as a Class D felony, but during closing arguments, the State discovered that it had omitted the evidence to establish that the total weight of the marijuana exceeded thirty grams. Therefore, the parties agreed that the charge should be reduced to the lesser included Class A misdemeanor offense, for which the jury found him guilty.

2014, the trial court sentenced Shelton to concurrent terms of one year on Count I, five years on Count II, and two years on Count III.

[13] Shelton now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[14] Shelton claims that the trial court erred when it denied his motion to suppress the evidence seized during the warrantless search of his property. However, Shelton appeals from a completed trial, and "[d]irect review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal." *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). Therefore, this "appeal is best framed as challenging the admission of evidence at trial." *Id.*

[15] Questions concerning the admissibility of evidence are reserved to the sound discretion of the trial court and are subject to review only for an abuse of that discretion. *Id.* at 259-60. It is an abuse of discretion if the trial court's decision "is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260. On review, our court will not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence in a light most favorable to the trial court's

evidentiary ruling. *Nowling v. State*, 955 N.E.2d 854, 857 (Ind. Ct. App. 2011), *clarified on reh'g on other grounds*; *trans. denied*.

## II. *Search and Seizure*

[16]  Shelton asserts that the search of his property violated the Fourth Amendment to the United States Constitution, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects" against unreasonable searches and seizures by the government.[2]  *See Berry v. State*, 704 N.E.2d 462, 464-65 (Ind. 1998) ("[T]his protection has been extended to the states through the Fourteenth Amendment.").  In general, searches may only "be conducted pursuant to a warrant supported by probable cause."  *State v. Schlechty*, 926 N.E.2d 1, 3 (Ind. 2010), *reh'g denied*.  Absent a well-delineated exception, evidence that is seized in violation of the warrant requirement is subject to exclusion from the defendant's prosecution.  *Clark*, 994 N.E.2d at 260.

[17]  It is undisputed that Officer Flanagan did not obtain a warrant prior to searching Shelton's residence.  Nevertheless, it is well-established that certain "special needs" beyond the normal need for law enforcement "may justify departures from the usual warrant and probable cause requirements."  *Kopkey v. State*, 743 N.E.2d 331, 337 (Ind. Ct. App. 2001), *trans. denied*.  Such "special

---

[2]  Article 1, Section 11 of the Indiana Constitution contains a nearly identical guarantee, but a state constitutional claim requires a separate and independent analysis from a Fourth Amendment claim.  *See State v. Schlechty*, 926 N.E.2d 1, 3 (Ind. 2010), *reh'g denied*.  Although Shelton briefly references the State's constitutional provision, he relies entirely on cases concerning federal Fourth Amendment jurisprudence.  Accordingly, we address this case on Fourth Amendment grounds and express no opinion on whether the result would be the same under the Indiana Constitution.  *See id*.

needs" have frequently been found in situations relating to the supervision and rehabilitation of criminal offenders who are on probation. *See Purdy v. State*, 708 N.E.2d 20, 22 (Ind. Ct. App. 1999). In these cases, a warrantless search may be justified because "probationers do not enjoy 'the absolute liberty to which every citizen is entitled.'" *United States v. Knights*, 534 U.S. 112, 119 (2001) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)).

[18] In the present case, Shelton was not on probation at the time of the search. Rather, he was executing his sentence through his direct placement in Community Corrections' day reporting program, which consisted of electronically-monitored home detention. *See* I.C. §§ 35-38-2.6-2; -5. As our court has previously found,

> [i]n-home detention, like probation or incarceration, is a form of criminal punishment. Like probation, in-home detention is one point "on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service." In-home detention is likewise a conditional liberty dependent on the observance of special restrictions that are meant to assure that the detention serves as a period of genuine rehabilitation and that the community is not harmed by the detainee's having frequent contact with the public. These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed.

*Kopkey*, 743 N.E.2d at 337 (internal citations omitted) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987)). Accordingly, because the search of an offender on home detention invokes the same "special needs" as that of a probationer, "a lesser degree" than probable cause will satisfy the Fourth Amendment. *Knights*, 534 U.S. at 121.

[19] The United States Supreme Court has established that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* Thus, as succinctly stated by our own supreme court, the questions before our court "are whether the officers had reasonable suspicion to believe that [Shelton] was engaged in criminal activity and whether there was a search condition included in his terms of [Community Corrections placement]." *Schlechty*, 926 N.E.2d at 6. Shelton concedes that he consented to have his house, property, and person searched as a condition to serving his sentence through Community Corrections. However, he posits that "the State failed to show that the search was reasonable." (Appellant's Br. p. 8).

[20] We first note that there is a distinction "between the 'reasonableness' of a search under the Fourth Amendment and whether there was 'reasonable suspicion' to support a particular search." *Kopkey*, 743 N.E.2d at 336. Notwithstanding the specific terms of a conditional release, *all* government searches must be reasonable. *Schlechty*, 926 N.E.2d at 6. As such, the Fourth Amendment would not support "the indiscriminate ransacking of a probationer's home at all hours, or the pumping of his or her stomach, simply because a probation term included a search condition." *Id.* at 6-7. Here, we find nothing unreasonable in the search of Shelton's property. By escorting K-9 Dixie through the house and garage to sniff for the presence of illicit drugs, Officer Flanagan's search was completed in a timely manner and was not

overly intrusive. Thus, the issue before our court is whether there was reasonable suspicion to believe that Shelton had engaged in criminal activity.

[21] "Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, but it still requires at least a minimal level of objective justification and more than an inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Id.* at 7 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000)). While a trial court's admissibility determination is reviewed for an abuse of discretion, "the ultimate determination of reasonable suspicion is reviewed *de novo*." *Nowling*, 955 N.E.2d at 860. In deciding whether the officer had reasonable suspicion, we consider the totality of the circumstances to determine whether the officer had "a particularized and objective basis for suspecting legal wrongdoing." *Segar v. State*, 937 N.E.2d 917, 921 (Ind. Ct. App. 2010). Reasonable suspicion "is dependent upon both the content of the information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990).

[22] In this case, Officer Flanagan's investigation was initiated by an anonymous tip via Crime Stoppers. As a general rule, an anonymous tip, by itself, is insufficient to create reasonable suspicion. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997), *clarified on reh'g on other grounds*. However, reasonable suspicion may be established if "significant aspects of the tip are corroborated by the police." *Id.* "Such corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility." *Sellmer v. State*, 842 N.E.2d 358, 361

(Ind. 2006). Furthermore, in order to be considered reliable, the anonymous tip "must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior." *Id.*

The informant reported that Shelton had been bragging about stealing marijuana out of a police vehicle. Despite the anonymity, we find that the informant's reliability is bolstered by the fact that he or she provided accurate information that had not been publicly disclosed. In fact, very few police officers were even aware of the theft incident. Moreover, the informant identified Shelton by name and further specified that he was on house arrest through DuComb Community Corrections. These specific details—which were independently corroborated by Officer Flanagan—indicate a personal familiarity with Shelton and his activities. Accordingly, we find that the anonymous tip exhibited sufficient indicia of reliability to create reasonable suspicion for the search in accordance with the Fourth Amendment.

## CONCLUSION

Based on the foregoing, we conclude that the trial court acted within its discretion in admitting the evidence seized from Shelton's property because Officer Flanagan's search was justified by the combination of a reasonable suspicion that Shelton engaged in criminal activity and a search condition contained in his agreement with Community Corrections.

Affirmed.

Vaidik, C.J. and Baker, J. concur