## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 20 2018, 10:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Maeson Lee Coffin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 20, 2018

Court of Appeals Case No.
18A-CR-506

Appeal from the Marshall Superior Court

The Honorable Robert O. Bowen, Judge

Trial Court Cause No.
50D01-1611-MR-1

**Crone, Judge.**

# Case Summary

[1] Maeson Lee Coffin pled guilty via open plea agreement to level 4 felony burglary, level 6 felony auto theft, and level 6 felony theft. The trial court sentenced him to a fifteen-year aggregate term. Coffin now appeals his sentence, claiming that the trial court abused its discretion in imposing consecutive sentences. He also asserts that his sentence is inappropriate in light of the nature of his offenses and his character. Finding that Coffin has failed to establish an abuse of discretion and has failed to meet his burden of demonstrating that his sentence is inappropriate, we affirm.

# Facts and Procedural History

[2] In 2016, Coffin was renting a small residence from seventy-nine-year-old Richard "Paul" Costello. The residence was situated on a large parcel of land, where Costello maintained his own residence and some outbuildings. In October 2016, Coffin allowed Gauvin Monaghan to reside with him at his rental house. One evening in late October, Monaghan drove Coffin to Costello's residence, where Costello's brutally beaten and lifeless body lay on the ground. Monaghan and Coffin stole Costello's cell phone and other items from his person. Monaghan stated that they needed to move Costello's body, so they chained and dragged the body to a remote outbuilding on the property, put a plastic barrel over part of the body, and attempted to cover the remainder with sheet metal. The two entered Costello's home and garage and stole several items, including power tools and a large TV. They put the contraband in Costello's vehicle and drove to South Bend, where Monaghan's father lived.

They pawned the items they had stolen and drove Costello's vehicle to New York, where Monaghan's mother lived.

[3] Costello's relatives became concerned because they had not heard from him for a couple weeks. On November 5, 2016, his brother and sister-in-law went to his property, searched the buildings, and discovered Costello's decayed and concealed body outside one of the outbuildings. They notified the county sheriff's department concerning the suspicious circumstances surrounding their discovery. The state police were brought in to assist with processing the crime scene, and the death was ruled a homicide due to blunt force trauma to the head. Among the missing items were Costello's vehicle and cell phone. Through provider records, the cell phone was traced to a location in New York.

[4] Late that night, after seeing a news report regarding Costello's death, Monaghan's girlfriend M.P. and her mother went to the police station to provide information concerning Monaghan's whereabouts and possession of the stolen vehicle. M.P. reported that she had been present during an incident at Coffin's rental house on October 27, 2016, where Costello had come to collect unpaid rent from Coffin and Monaghan, an argument had ensued, and Monaghan had commented that he should kill Costello and steal his vehicle. M.P.'s mother told police that she had contacted Monaghan's mother, who confirmed that Monaghan and Coffin were currently at her New York residence and verified the color, make, and model of the vehicle they had driven there (an exact match with Costello's vehicle).

[5] On November 10, 2016, the State charged Coffin with murder and level 6 felony auto theft. On December 16, 2016, the State amended the information charging Coffin with conspiracy to commit murder, murder, level 4 felony burglary, level 6 felony auto theft, and level 6 felony theft. Coffin pled not guilty, and a jury trial was scheduled. On December 21, 2017, Coffin entered into an open plea agreement in which he pled guilty to burglary, auto theft, and theft, and the State dismissed the murder and conspiracy counts.

[6] During sentencing, the trial court heard victim impact testimony from several of Costello's relatives as well as character testimony from Coffin's relatives. The court identified as aggravating factors Coffin's juvenile record, which includes true findings for theft and burglary, his violation of a relationship of trust with the victim, his conduct in fleeing the jurisdiction after he committed his offenses, and his assistance in covering up a murder crime scene. Appellant's App. Vol. 2 at 142. The court identified Coffin's guilty plea as the sole mitigating factor and sentenced Coffin to consecutive terms of twelve years for burglary, one and a half years for auto theft, and one and a half years for theft. Coffin appeals his sentence. Additional facts will be provided as necessary.

## Discussion and Decision

### Section 1 – The trial court acted within its discretion in imposing consecutive sentences.

[7] Coffin asserts that the trial court abused its discretion in imposing consecutive sentences because it "never made any specific finding that the aggravators

outweighed the mitigators." Appellant's Br. at 13. The trial court's written sentencing order does make such a finding. Appellant's App. Vol. 2 at 143. Therefore, we find no abuse of discretion.[1]

## Section 2 – Coffin has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of his offenses and his character.

[8] Coffin asks that we review and revise his sentence pursuant to Indiana Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When a defendant requests appellate review and revision of his sentence, we have the power to affirm or reduce the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010). In conducting our review, our principal role is to leaven the outliers, focusing on the length of the aggregate sentence and how it is to be served. *Bess v. State*, 58 N.E.3d 174, 175 (Ind. 2016); *Foutch v. State*, 53 N.E.3d 577, 580 (Ind. Ct. App. 2016). This allows for consideration of all aspects of the penal consequences imposed by the trial court in sentencing, i.e., whether it consists of executed time, probation, suspension, home detention, or placement in community corrections, and whether the sentences run concurrently or consecutively. *Davidson v. State*, 926 N.E.2d

---

[1] In arguing that the trial court was required to make such a finding, Coffin's reliance on authority predating our supreme court's opinion in *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218, is questionable at best.

1023, 1025 (Ind. 2010). We do "not look to see whether the defendant's sentence is appropriate or if another sentence might be *more* appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Foutch*, 53 N.E.3d at 581 (quoting *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied* (2014)). The defendant bears the burden of persuading this Court that his sentence meets the inappropriateness standard. *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[9] In considering the nature of Coffin's offenses, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Green v. State*, 65 N.E.3d 620, 637-38 (Ind. Ct. App. 2016), *trans. denied* (2017). When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about the offense as committed by the defendant that "makes it different from the typical offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011).

[10] Coffin pled guilty to one level 4 felony and two level 6 felonies. A level 4 felony carries a sentencing range of two to twelve years with an advisory term of six years. Ind. Code § 35-50-2-5.5. The statutory range for a level 6 felony is six months to two and one-half years, with an advisory term of one year. Ind. Code § 35-50-2-7(b). Coffin's aggregate fifteen-year term comprises twelve years for the level 4 felony, with consecutive one and a half-year terms on each of the two level 6 felonies.

[11]     The circumstances surrounding Coffin's offenses are far more egregious than those typically involved when a person commits burglary, auto theft, and theft, offenses often involving no physical harm to or contact with a victim. Here, Coffin assisted Monaghan in chaining and dragging Costello's newly murdered body to a remote location on Costello's property and hiding it in a barrel and under some sheet metal to avoid detection. The two young men then broke and entered Costello's residence to procure items for their getaway. They took several items from the house, stole Costello's vehicle, and fled for New York, pawning whatever they could in exchange for money to facilitate their flight. Coffin did not merely steal an automobile and personal property from a person's residence; rather, he aided in covering up a brutal murder and then facilitated the perpetrator's escape. The nature of Coffin's offenses does not merit a reduction in his fifteen-year sentence.

[12]     Likewise, Coffin's character does not militate toward a shorter sentence. We conduct our review of his character by engaging in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*, 11 N.E.3d 571. Coffin began illegally consuming alcohol and marijuana at age fifteen. That same year, he had a juvenile delinquency true finding for acts amounting to class D felony theft if committed by an adult. His probation was revoked when, at age sixteen, he committed acts resulting in six true findings – two for acts amounting to class C felony burglary, two for acts amounting to class D felony theft, and two for acts amounting to class A misdemeanor criminal mischief if committed by an adult. He has no prior

record as an adult, as he was only eighteen at the time he committed his current offenses.

[13] With respect to Coffin's relationship with the victim, we note that Costello was Coffin's landlord and friend who encouraged him and demonstrated patience with him concerning rent payments. During sentencing, Coffin acknowledged Costello's positive influence on him, stating, "Paul wanted me to better myself by following my dreams." Tr. Vol. 2 at 19. In contrast, he described Monaghan as someone he did not know well and had known only for a few weeks. Yet, he showed callous disregard for his friend and mentor to help a purportedly casual acquaintance cover up a heinous crime and then fled the state with the acquaintance while his friend's body lay decaying and undetected. He attributed his actions to fear of Monaghan but admitted that at the time of the offenses and in the days before his arrest, "I had plenty of opportunities to flee and call the police, but I didn't." *Id*. at 19.

[14] Coffin asks that we consider his remorse as indicative of his upstanding character. Trial courts are uniquely situated to observe a defendant and can best determine whether his remorse is genuine. *Phelps v. State*, 969 N.E.2d 1009, 1020 (Ind. Ct. App. 2012), *trans. denied*. During sentencing Coffin testified, in reflecting on his actions, "I mentally beat myself up every morning." Tr. Vol. 2 at 19. Testimonials from his relatives and friends urged forgiveness and a second chance. Several of Costello's relatives submitted victim impact letters and testimony during sentencing, many questioning the authenticity of Coffin's remorse and each requesting that Coffin be given the

maximum sentence. For example, Costello's youngest brother testified concerning Coffin's "callous and uncaring" conduct in choosing not to alert authorities so that Costello's body could be found. *Id*. at 12. Instead, Coffin "ransack[ed] and pillag[ed]" Costello's property, left his body to "rot," drove to New York, and "partied for days until [he was] caught." *Id*. at 12-13.

[15] Coffin also asserts that his decision to plead guilty reflects his willingness to take responsibility for his actions. The trial court designated his guilty plea as the sole mitigating factor in making its sentencing decision. However, we note that Coffin initially pled not guilty, sought and was granted a continuance, and had his case set for jury trial. Over one year elapsed between the time Coffin was charged and the date he decided to plead guilty. Even then, he received a substantial benefit in the form of the dismissal of the murder and conspiracy charges. The notion that sparing Costello's family the trauma of a trial demonstrates Coffin's good character rings hollow in the face of Coffin's abject disregard for Costello's frantic family members after he actively concealed and left Costello's body to decompose for over a week after the murder.

[16] In sum, Coffin has failed to meet his burden of demonstrating that his sentence is inappropriate in light of the nature of the offenses and his character. Accordingly, we affirm.

[17] Affirmed.

Najam, J., and Pyle, J., concur.