## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2017, 9:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Mark Lynn Rushing, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 29, 2017 <br><br> Court of Appeals Case No. 20A03-1703-CR-493 <br><br> Appeal from the Elkhart Superior Court <br><br> The Honorable Charles Carter Wicks, Judge <br><br> Trial Court Cause No. 20D05-1511-CM-1776 |

**Baker, Judge.**

[1] Mark Rushing was convicted of Class B Misdemeanor Harassment.[1] He appeals, arguing that he was denied his right to compulsory process, that the trial court erred in admitting certain evidence, that fundamental error occurred when the trial court made a certain inquiry of the jury, and that there was insufficient evidence. Finding no error, we affirm.

## Facts

[2] Rushing and C.G. met sometime in or around March 2014 and dated for two to three months. During this time, Rushing pressured C.G. to have sex; C.G. told Rushing that "it wasn't right outside of marriage." Tr. Vol. II p. 146. Rushing ended the relationship sometime in June or July 2014. C.G. did not speak to Rushing or ask him to text her after their relationship ended.

[3] Sometime between July and November 2014, Rushing began sending C.G. text messages that "were not very pleasant." *Id.* at 160. After C.G. blocked Rushing's number on her phone, she received multiple phone calls from him from a different phone number, and he left her a voicemail message. C.G.'s pastor advised her to unblock Rushing's number so that evidence could be collected. When C.G. did so in November 2014, her phone "started blowing up" with text messages from Rushing that were "disturbing," "vulgar," and "violent." *Id.* at 148, 161. Rushing's messages to C.G. included the following:

---

[1] Ind. Code § 35-45-2-2(a)(2).

- "Don't be scared come see me [C.G.]!  I will let you suck my c*ck.  You said you like c*ck.  You said you want to be taken.  But you would rather a guy stalk you.  Makes you a wh*re.  Now come learn to be a sl*t!"
- "You ready to f*ck yet?"
- "B*tch wake up!!!  Let's have sex!!!"
- "Your a wh*re you will f*ck a complete stranger said you want to be taken.  The guys you f*ck won't even go out with you again.  Now get over here and f*ck."
- "Full erection babe lets go."
- "Like I said let's F*CK now!  Where is my key?  Who told you to throw it away?  Who told you to stop talking to me?  It's time to f*ck."
- "You like stalked and rapped.  That's why you let it happen wh*re."

State's Exs. 1-13 (spelling and grammar original).  C.G. did not respond to Rushing's text messages.

[4]  On November 2, 2015, the State charged Rushing with Class B misdemeanor harassment.  Rushing's first attorney withdrew from the case after he and Rushing disagreed about how to proceed and what witnesses to call; in an April 13, 2016, pre-trial hearing, counsel stated that there "are some things I found not appropriate to do."  Tr. Vol. II p. 41.  Rushing was then appointed a public defender.  In a September 19, 2016, pre-trial hearing, Rushing's new counsel stated that he and Rushing were having difficulty developing a list of witnesses because Rushing wanted his attorney to subpoena numerous witnesses, and "as his attorney I'm not going to subpoena all these people just to get them in here to a defense that I believe has no merit."[2]  Id. at 66.  The trial court explained to

---

[2] Counsel explained this conflict during the September 19, 2016, pre-trial hearing.  Although not discussed on appeal, the record shows that Rushing wanted approximately twenty people from his church to testify that at

Rushing that his public defender was to determine how to best represent Rushing and that Rushing did not get to dictate to his counsel how the trial would proceed. The trial court also explained that the witnesses Rushing wanted to call did not necessarily relate to his charge but rather to mitigating factors considered during sentencing.

[5] Rushing's jury trial took place on October 27, 2016. At the start of the trial, when the trial court asked the parties whether they had objections to the proposed voir dire instructions, Rushing objected that he wanted to call witnesses that his counsel was not going to call. The trial court told Rushing that he would have to "confer with your counsel about other witnesses but their testimony would have to be relevant" and that Rushing's counsel considered the witnesses "detrimental to your case." *Id.* at 90, 92.

[6] Once trial began, the State moved to admit Rushing's text messages to C.G. into evidence. When the trial court asked whether there were any objections, Rushing stated "I do," while his counsel stated, "I have no objection." *Id.* at 149. The trial court admitted the exhibits "without objection." *Id.*

[7] During the lunch recess, Rushing became upset with his attorney and left the courthouse. Following that recess but before the jury returned to the

---

least several of them suggested that Rushing stop taking his medication. Rushing knew that he would have problems if he stopped taking his medication. Defense counsel told Rushing that whether or not he took medication was not a defense to the charge of harassment.

courtroom, the State told the trial court that Rushing and his counsel got into an argument that the jury might have heard. When the trial court asked whether they needed to question the jury about it, Rushing's counsel stated, "Not on his behalf but he did get pretty heated." *Id.* at 167. When the jury returned to the courtroom, the trial court stated as follows:

> Now one other thing I'm told that the defendant and his attorney were having some discussion in the courtroom over the lunch hour after you were sent out into recess. Did any of you hear any of that discussion? Okay. Just a second. I have some notes I've got to make.

*Id.* at 171.

[8] The jury found Rushing guilty as charged. On March 9, 2017, the trial court imposed a sentence of 180 days, which was a sentence of time served. Rushing now appeals.

# Discussion and Decision

[9] Rushing makes four arguments on appeal: (1) that he was denied his right to compulsory process to call certain witnesses; (2) that the trial court erred by admitting the State's exhibits; (3) that fundamental error occurred following the trial court's inquiry to the jury about Rushing's argument with his counsel; and (4) that there was insufficient evidence to prove that Rushing intended to harass C.G.

# I. Compulsory Process

[10] Rushing argues under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution that he was denied his right to compulsory process to call certain witnesses to testify on his behalf.

[11] The Sixth Amendment to the United States Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." Article 1, Section 13 of the Indiana Constitution provides that "In all criminal prosecutions, the accused shall have the right to . . . have compulsory process for obtaining witnesses in his favor." We have stated that the Sixth Amendment guarantees a criminal defendant the right to present witnesses on his behalf. *Washington v. State*, 840 N.E.2d 873, 880 (Ind. Ct. App. 2006). Although the right to present witnesses is of critical importance, it is not absolute and must sometimes yield to other legitimate interests in the criminal trial process. *Id.*

[12] Rushing wanted to call numerous witnesses who he believed "could clear his name." Appellant's Br. p. 16. During his trial, Rushing stated that he had witnesses his attorney refused to call. The trial court explained that Rushing needed to confer with counsel, who considered the potential witnesses "detrimental" to the case. Tr. Vol. II p. 92. The trial court further explained that the witnesses' testimony would have to be relevant to the case and that "I have to agree with your counsel I'm not sure I understand what [the witnesses] would have to do with anything." *Id.* at 90. Although on appeal Rushing does

not provide any information about what his witnesses would have testified to or how they would have helped clear his name, the record shows that Rushing wanted them to testify to what defense counsel considered a meritless defense. Further, Rushing's attorney offered another strong strategic reason for not calling the witnesses—the witnesses were not relevant to the issue of whether Rushing harassed C.G. Counsel is free to make reasonable strategic decisions. *Carter v. State*, 738 N.E.2d 665, 676 (Ind. 2000). It is reasonable for counsel to refrain from calling witnesses whose testimony would not be relevant to the charge being tried. Rushing's argument is unavailing.

## II.  Admission of Evidence

[13]  Rushing also argues that the trial court erroneously admitted the text messages into evidence. We will reverse a trial court's ruling on the admissibility of evidence only if the decision is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *E.g., Shelton v. State*, 26 N.E.3d 1038, 1042 (Ind. Ct. App. 2015).

[14]  At trial, when the State moved to admit Rushing's text messages to C.G. into evidence, Rushing objected, but his counsel did not, and the trial court admitted the exhibits without objection. Rushing contends that the trial court erred by failing to provide Rushing with the opportunity to explain why he objected to the admission of this evidence. But Rushing "consented to representation by counsel, thus allocating to his counsel the power to make binding decisions of trial strategy." *Driver v. State*, 725 N.E.2d 465, 471 (Ind. Ct. App. 2000). The

trial court properly considered counsel's lack of objection and admitted the exhibits without objection. Moreover, on appeal, Rushing fails to offer even one reason as to why he objected to the admission of this evidence or why it was error for the trial court to admit it. The trial court did not err in admitting this evidence.

## C. The Argument

[15] Rushing next argues that fundamental error occurred when the trial court did not sufficiently inquire into whether the jury overheard Rushing's argument with his counsel.

[16] Because Rushing did not object to the trial court's questioning of the jury, he must establish fundamental error to prevail. The fundamental error doctrine is an exception to the general rule that the failure to object at trial constitutes a procedural default precluding consideration of an issue on appeal. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). Fundamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible. *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008).

[17] The trial court asked the jury whether they had heard Rushing arguing with his counsel during the lunch recess. Rushing contends that this inquiry constitutes fundamental error because the record does not reflect whether the jurors actually heard the argument and the jury members were not questioned

individually.  When the trial court asked the jury about this matter, the trial court stated:  "Did any of you hear any of that discussion?  Okay."  Tr. Vol. II p. 171.  Although the record does not explicitly show that the jury responded in the negative to the trial court's question, such response can be inferred from the fact that the trial court said "Okay" and then moved on to closing arguments.  In other words, the record does not reflect that the jury overheard the argument because the jury did not, in fact, overhear the argument.  Thus, individual questioning of the jurors about the matter was unnecessary.  The trial court did not commit error, let alone fundamental error, in its inquiry to the jury about Rushing's argument with his counsel.

## D.  Sufficiency of the Evidence

[18] Finally, Rushing argues that there is insufficient evidence supporting his conviction.  When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction.  *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).  We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

[19] To convict Rushing of Class B misdemeanor harassment, the State was required to prove beyond a reasonable doubt that Rushing, with the intent to harass, annoy, or alarm another person but with no intent of legitimate communication

communicated with a person by telegraph, mail, or other form of written communication. I.C. § 35-45-2-2(a)(2).

[20] Specifically, Rushing argues that the State failed to prove beyond a reasonable doubt that Rushing *intended* to harass C.G. Several months after Rushing and C.G.'s relationship had ended, Rushing began texting C.G. and continued to do so despite receiving no response from her. When C.G. blocked Rushing's number on her phone, he began calling her from another phone number. When C.G. unblocked him, Rushing repeatedly texted her, again without receiving any reply. Although Rushing argues that, when he sent C.G. the text messages, he did not know that they upset her or that she wanted them to stop, his continued attempts to contact C.G. despite her lack of response suggests that he was determined to contact her regardless of whether she was interested in communicating with him. In addition, Rushing's text messages to C.G. were demeaning, offensive, and lewd—hardly the kind of communication that would encourage a response. Because Rushing knew that C.G. did not want to engage in sexual activity before marriage, he would have been aware that C.G. would not welcome his sexual text messages. Under these circumstances, it is entirely reasonable to infer that Rushing communicated with C.G. with the intent to harass and annoy her. In other words, the evidence is sufficient to support his conviction.

The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.