**FILED**

Jul 24 2015, 6:48 am

CLERK
of the supreme court,
court of appeals and
tax court



ATTORNEY FOR APPELLANT

ATTORNEY FOR APPELLANT

Ross G. Thomas
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Antyon Buford,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 24, 2015

Court of Appeals Case No.
20A05-1408-CR-392

Appeal from the Elkhart Superior
Court;
The Honorable George Biddlecome,
Judge;
20D03-1305-FA-25

**May, Judge.**

[1] Antyon Buford appeals his convictions of Class A felony dealing cocaine,[1] Class B felony unlawful possession of a firearm by a serious violent felon,[2] and Class D felony maintaining a common nuisance.[3] As the warrant on which the search of his residence was premised was not supported by probable cause, we reverse and remand.[4]

## Facts and Procedural History

[2] Elkhart police received information from an "intelligence form," (Tr. at 27), the prosecutor's office provided that there might be drug activity at a residence Buford was renting. The source of the information was not identified. The tip named Johnny Stewart, who had an open arrest warrant, in connection with the activity. Police went to the residence, where the screen door was shut but the front interior door was open. They smelled burnt marijuana as they approached the front door and saw Buford and Stewart just inside the door. Stewart and Buford ran when the officers knocked on the door and identified themselves, but when the officers continued knocking Stewart came to the door. Stewart told the police Buford was the tenant.

---

[1] Ind. Code § 35-48-4-1 (2013).

[2] Ind. Code § 35-47-4-5 (2013).

[3] Ind. Code § 35-48-4-13 (2013).

[4] Because we reverse, we need not address Buford's allegations certain evidence was admitted without a proper foundation and the substitution of a new judge at the beginning of his trial deprived him of due process.

[3] Buford came downstairs after Stewart called for him to do so. He provided identification to the police, and they determined there was a warrant for Buford's arrest. They entered the residence and handcuffed Buford and Stewart. The odor of marijuana was stronger inside the house, and the officers saw marijuana "shake"[5] on the dining room table. (*Id.* at 45.) One of the officers left to obtain a search warrant.

[4] The probable cause affidavit on which the search warrant was premised stated the affiant officer had good cause to believe evidence of drug "dealing" would be found at the residence. (App. at 92.) The warrant was issued and during the search police found a gun, bullets, marijuana roaches, a scale with white residue that field-tested positive for cocaine, a white rock that appeared to be cocaine, and plastic baggies with the corners cut off. Buford moved to suppress evidence on the ground there were false and misleading statements in the probable cause affidavit and the police began to search before the warrant was issued. His motion was denied. A trial was conducted and the jury found Buford guilty of all counts.

## Discussion and Decision

[5] Buford argues the evidence obtained pursuant to the search warrant should have been suppressed because the affidavit the police offered in obtaining the

---

[5] An officer testified "shake" is "remnants of marijuana." (Tr. at 45.) "So it's not the actual bud itself, but it's things that it can be small pieces of marijuana that come off the actual bud itself." (*Id.*)

warrant included uncorroborated hearsay and false or misleading statements. As the probable cause affidavit included hearsay information that was not corroborated by the totality of the circumstances, the warrant should not have been issued.

[6] In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983), *reh'g denied*). The duty of the reviewing court is to determine whether the magistrate had a substantial basis for concluding there was probable cause. *Id*. Determining whether there is a "substantial basis" requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause. *Id*. at 181-82. That standard applies to the trial court's ruling on a motion to suppress and to our review of that decision. *Id*. at 182. In this review, we consider only the evidence presented to the issuing magistrate and not *post hac* justifications for the search. *Id*.

[7] Ind. Code § 35-33-5-2 provides in part:

> no warrant for search or arrest shall be issued until there is filed with the judge an affidavit:
>> (1) particularly describing:

(A) the house or place to be searched and the things to be searched for; or

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things sought are concealed there; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.

(b) When based on hearsay, the affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the hearsay.

[8] Uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant. *Newby v. State*, 701 N.E.2d 593, 598 (Ind. Ct. App. 1998). The reliability of hearsay can be established in a number of ways, including where: (1) the informant has given correct information in the past, (2) independent police investigation corroborates the informant's statements, (3) some basis for the informant's knowledge is demonstrated, or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. *Id.*

[9] The State does not argue the affidavit was not premised, at least in part, on uncorroborated hearsay.[6] Rather, it argues such allegation of error is not available to Buford on appeal because he objected to the warrant on different grounds at trial, citing *White v. State*, 772 N.E.2d 408, 411 (Ind. 2002) (when party objects on one ground at trial and raises a different ground on appeal, issue is waived for review).

[10] We reject the State's argument Buford "did not present a claim that the warrant was unsupported by probable cause." (Br. of Appellee at 12.) The State is correct that Buford's motion to suppress alleged only that the affidavit included false and misleading statements, and that at the hearing on the motion Buford agreed with the judge's characterization of his argument as "[n]ot really that the search warrant on its face is invalid, but rather that the facts set forth in it are not correct." (Tr. at 2.)

[11] But the State does not acknowledge that at the hearing, Buford did challenge the validity of the warrant to the extent it was premised on uncorroborated hearsay from an anonymous source. The State complained at the hearing that

---

[6] The State does assert, without citation to legal authority, that "the fact that the anonymous tip was not corroborated is of no moment," (Br. of Appellee at 13), because probable cause was not based on the tip – it was based on what happened when the officers went to the house. As explained below, nothing the officers saw when they went to the house provided evidence to corroborate the allegation in the affidavit of "dealing."

The State also says the affidavit "does not purport to say that the tip came from a reliable or known source." (*Id.* at 14.) In fact, the affidavit explicitly says police "received a drug tip, from the Elkhart County Prosecutor's Office." (App. at 92.) As we have been directed to no evidence suggesting otherwise, we presume the prosecutor's office received the tip from an unnamed informant.

the statements in the motion were "conclusory," (Tr. at 5), and Buford's counsel "should put the state on notice as to what the alleged false and misleading representation are [sic] so that we have a fair opportunity to defend them." (*Id.*) The court asked counsel to tell the State "what it is you say is false." (*Id.* at 7.)

[12] Counsel responded that paragraph three of the affidavit made reference to an anonymous drug tip the police received from the prosecutor's office, and "[t]here's no mention anywhere in this paragraph with respect to reliability of the particular informant that provided that tip." (*Id.*) Counsel asserted "there was no corroborating information, no independent basis or understanding for the reliability of this particular informant. . . . without any reference to such information within the body of this affidavit for search warrant, [the affiant's statement the information was based on personal knowledge and corroborated through independent investigation] is a false and misleading statement." (*Id.* at 8.) The State did not respond, and the trial commenced. Buford did not waive that allegation of error.

The affidavit police offered to establish probable cause for issuance of the search warrant alleged the Elkhart police

> received a drug tip, from the Elkhart County Prosecutor's Office, that [Stewart] is selling drugs out of the residence. The drug tip advised that there are numerous vehicles pulling up at [the residence] for short periods of time, people exiting the vehicles and going into the house, and the same people leaving the residence shortly after entering.

(App. at 92.) The affidavit goes on to say the police conducted surveillance of the residence about three weeks later, and they saw Buford and Stewart there. "It was known to the Elkhart Police Drug Unit that" Buford had a warrant for driving while suspended and Stewart had a warrant for a probation violation. (*Id*.) It says police went to the residence and could smell burnt marijuana coming from it. They entered the residence and saw marijuana on a table.

[13] The affidavit states: "[t]he undersigned affiant swears upon his oath that he believes and has good cause to believe that: Certain evidence involved in the commission of *the offenses of Dealing Marijuana and or other illegal substances* exists [at Buford's residence]." (App. at 92) (emphasis added). The only allegation of "dealing" is the statement in paragraph three, which is based on the anonymous tip.

[14] As noted above, an affidavit based on hearsay must either 1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished, or 2) contain information that establishes that the totality of the circumstances corroborates the hearsay. *See*, *e.g., Newby* 701 N.E.2d at 598 (noting uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant, and stating the federal test for ensuring the reliability of a hearsay statement in a probable cause determination allows the use of hearsay "only if the totality of the circumstances corroborates the hearsay") (citing *Gates*, 462 U.S. at 230-31).

The affidavit asserting police would find evidence of "dealing" at Buford's residence contained no information to satisfy the first requirement, nor did the totality of the circumstances corroborate the hearsay statement there was "dealing" at the residence. After the reference to the "tip" that Stewart was "selling drugs out of the residence," (App. at 92), the affidavit asserts the police saw Buford and Stewart at the residence; police smelled burnt marijuana when they approached the residence; and when Buford opened the door and they entered the house they saw marijuana[7] on the table. As none of those circumstances corroborate a statement there was dealing at the house, the affidavit did not provide probable cause for the issuance of a search warrant.

In *Jaggers*, an officer received an anonymous telephone call asserting: (1) he had personally seen marijuana in and around Jaggers' house on numerous occasions over the course of several years, most recently in the prior week; and (2) Jaggers was growing marijuana on two plots of land away from his residence. The caller described the house and the location of the off-site plots, including approximately how many marijuana plants would be found there. The officer determined the caller's description of the house was accurate. He drove to each of the described plots and found marijuana growing there. Both

---

[7] As the affidavit did not indicate how much marijuana the officers saw, that statement could not corroborate the tip that drugs were being sold out of the residence. The police testimony at trial was that the amount the officers saw was "small" and was described as "shake" – that is, "remnants of marijuana." (Tr. at 45.) "So it's not the actual bud itself, but it's things that it can be small pieces of marijuana that come off the actual bud itself." (*Id.*) We decline to hold evidence of a "small" amount of "shake," without more, can support an allegation of "dealing."

plots were on land easily accessible to the public, one approximately two miles and the other six miles from Jaggers' house. Based on the officer's testimony at a probable cause hearing, a magistrate issued a warrant authorizing a search of the described house for "[m]arijuana, 'grow' lights, and records and other similar written material recording or otherwise reflecting illegal trafficking in marijuana." 687 N.E.2d at 181. The officer executed the search warrant at Jaggers' house.

[17] Our Supreme Court determined the totality of the circumstances did not corroborate the hearsay: "The informant's claim that Jaggers was cultivating and trafficking marijuana in his house was entirely uncorroborated. The facts that were verified were unremarkable; anyone who knew the location of [Jaggers'] house and the two marijuana patches could have placed the anonymous phone call." *Id.* at 184.

[18] *And see Bradley v. State*, 609 N.E.2d 420, 423 (Ind. 1993), where there was insufficient information to establish that the totality of the circumstances corroborated hearsay:

> The fact that a Danny Bradley with prior robbery arrests was found in the computer to reside at the address given in the tip, and that a crime fitting the description of the one related by the informant had actually occurred does not constitute probable cause to believe that the anonymous caller was telling the truth, or that a search at that address would yield fruits of the crime.

[19] In the case before us, the totality of the circumstances did not corroborate a hearsay statement that there was "dealing" of drugs from Buford's residence or

that "a search at that address would yield fruits of the crime" of dealing. *Id*. We must accordingly reverse and remand for further proceedings.

[20] Reversed and remanded.

Robb, J., and Mathias, J., concur.