

**FILED**

Aug 16 2019, 7:50 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika P. Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Willie J. Bailey,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 16, 2019

Court of Appeals Case No.
18A-CR-2317

Appeal from the Marion Superior
Court

The Honorable Alicia A. Gooden,
Judge

Trial Court Cause No.
49G21-1702-F2-7827

**May, Judge.**

Willie J. Bailey appeals his convictions of Level 2 felony dealing in cocaine,[1] Level 2 felony dealing in narcotic drug,[2] Level 6 felony possession of a narcotic drug,[3] Level 6 felony escape for knowingly violating a home detention order,[4] and Class B misdemeanor possession of marijuana.[5] Additionally, the trial court enhanced Bailey's sentence for Level 2 felony dealing in a narcotic drug after finding him to be a habitual offender.[6] He raises five issues on appeal, which we restate as:

I. Whether the arrest and search of Bailey and his vehicle at a gas station violated either the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Indiana Constitution;

II. Whether the search of Bailey's residence violated either the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Indiana Constitution;

III. Whether the trial court committed reversible error in admitting the search warrant affidavit into evidence;

IV. Whether there was sufficient evidence to demonstrate Bailey constructively possessed the illegal drugs found in his residence; and

---

[1] Ind. Code § 35-48-4-1.

[2] Ind. Code § 35-48-4-1.

[3] Ind. Code § 35-48-4-6.

[4] Ind. Code § 35-44.1-3-4.

[5] Ind. Code § 35-48-4-11.

[6] Ind. Code § 35-50-2-8.

V.     Whether the prosecutor committed misconduct during closing arguments.

We affirm.

# Facts and Procedural History[7]

[2]     In November 2016, an anonymous individual informed the Indianapolis Metropolitan Police Department that a male nicknamed "Skip" drove a black Chevrolet Camaro, owned a house on Olney Street ("Olney Address"), and sold heroin out of the Olney Address. The tip indicated that when "Skip" arrived at the Olney Address every day between 9 a.m. and 10 a.m., drug users would flock to his car. The tip also stated that prostitutes were working out of the Olney Address. Consequently, the police began surveillance of the Olney Address. The registered owner of the Olney Address was Rebecca Goins, Bailey's domestic partner.

[3]     In the course of conducting surveillance on the Olney Address, the officers identified Bailey as the individual nicknamed "Skip" in the anonymous tip. Bailey was in community corrections at the time, serving home detention as a result of his conviction for dealing in a narcotic under Cause No. 49G20-1312-FB-079889. Bailey's registered address was on Old Stone Drive ("Old Stone Address"). Goins was also the registered owner of the Old Stone Address. As a condition of community corrections, Bailey was not to possess any controlled substances without

---

[7] We heard oral argument in this case on July 15, 2019, in Anderson, Indiana. We thank Anderson University and the Indiana State Police Youth Camp for their hospitality and thank counsel for their able presentations.

a valid prescription.  At his intake into community corrections, Bailey signed the Marion County Community Corrections contract, which provided:

> You must permit MCCC staff and/or Law Enforcement to enter the residence in which you are residing and to conduct a search of the residence at any time, without prior notice.  You must permit a search of your person or property by MCCC staff and/or Law Enforcement based on reasonable suspicion that a violation of any part of this contract has occurred.

(State's Exhibit 8.)  The contract also provided that someone on home detention is always to follow an approved schedule and to stay confined inside his residence, with certain exceptions (*i.e.*, working or traveling to an approved employment location, going to the doctor, *etc.*).

[4]  On November 9, 2016, officers observed a dark blue Chevy Camaro with an Indianapolis Colts license plate, registered to Goins, at the Olney Address.  Officers also observed a woman, later identified as Brittany Griswold, drive to the Olney Address in a silver Chevy Impala.  Griswold exited the Impala, entered the Camaro for approximately four minutes, left the Camaro, and then drove away from the Olney Address.  Police pulled Griswold over for a traffic violation shortly thereafter and discovered narcotics in her vehicle.

[5]  Police maintained surveillance of the Olney Address over the course of the next few days, and they witnessed several more "transactions," during which different persons would arrive at the scene, enter the Camaro briefly, and then leave the scene.  During these transactions, Bailey remained in the Camaro and, before and after each

transaction, an unidentified white female would go between the Olney Address and the Camaro.

[6] On another day, Bailey drove a white Chevy Silverado, also registered to Goins, to the Olney Address. Officers observed a woman drive to the Olney Address, enter Bailey's vehicle, then return to her vehicle. Shortly thereafter, one of Bailey's associates, later identified as Alyssa Masengale, rushed the woman to the local fire station where medics and firefighters treated her for a heroin overdose. Later that same day, officers pulled Bailey over for a traffic violation. Officers noticed a strong odor of marijuana emanating from the vehicle, and a K-9 unit gave a positive indication for drugs inside the vehicle. However, the officers did not find any drugs in the vehicle and allowed Bailey to leave.

[7] After a short break in the investigation, officers continued surveillance of the Olney Address. On January 4, 2017, they observed Bailey drive a Dodge Charger, registered to Goins, to the Olney Address. Throughout the day, Masengale would go back and forth from the Dodge Charger to the house, and other individuals would walk up to the Charger for a short period of time and then leave after an exchange was made through the driver's window. When Bailey drove away from the Olney Address, officers pulled over Bailey's Charger. The officers smelled burnt marijuana coming from inside the car, and a K-9 unit gave a positive indication for drugs in the vehicle. The officers found only marijuana crumbs and allowed Bailey to leave.

[8] On January 9, 2017, officers observed a Dodge Challenger pull up to a pump at a gas station and, a few minutes later, Bailey's car pulled up to the pump next to the Challenger. The driver of the Challenger exited his car, entered the back of Bailey's

car, then a short time later, returned to the Challenger. The front seat passenger of the Challenger also entered the back of Bailey's car and returned to the Challenger a short time later. Minutes later, the officers stopped the Challenger, found cocaine, marijuana, and four guns inside the vehicle, and arrested the occupants of the Challenger.

[9] On February 8, 2017, an undercover officer picked up a prostitute, Tiana Anderson, at the Olney Address. On February 16, 2017, officers surveilled Bailey's movements throughout the day. They observed Bailey leave the Old Stone Address and drive to the Olney Address. At the Olney Address, officers observed a female walk up to the car, lean in the window for a moment, then walk away. They also saw an individual drive up to the Olney Address in a Honda and enter Bailey's vehicle. Masengale also entered Bailey's vehicle. After a few minutes, the individual left Bailey's vehicle, returned to the Honda, and drove away. Minutes later, a male walked up to Bailey's window, exchanged something with Bailey, and then walked away. That morning, officers also observed females leading men into the house, which led the officers to believe prostitution was occurring at the house.

[10] The officers followed Bailey around town. At a gas station on North Shadeland Avenue, officers observed an individual quickly enter the back-passenger seat of Bailey's vehicle and leave less than a minute later. At another gas station on North Oaklandon Road, officers observed a female enter Bailey's vehicle, sit in the back-passenger seat for a short period of time, then exit the vehicle. Bailey then returned to the Olney Address where individuals continued to enter Bailey's vehicle for short periods of time and then exit the vehicle.

[11]     Later that same day, officers followed Bailey to the Old Stone Address and then to a parking lot in front of a barbershop. An individual left the barbershop, entered Bailey's vehicle briefly, and then returned to the barbershop. The officers observed Bailey interact with an individual in a Chevy Cruze at the parking lot. Officers followed the Chevy Cruze, approached the vehicle ostensibly to ask for directions, noticed narcotics, and arrested the driver of the vehicle. The driver, Troy Price, indicated he purchased the narcotics from Bailey at the barbershop. He also picked Bailey out of a photograph lineup. All told, officers observed twelve different suspected narcotics transactions between 9 a.m. and 4 p.m. on February 16, 2017.

[12]     On February 17, 2017, officers continued their surveillance of Bailey. Bailey drove a dark blue Camaro from the Old Stone Address to the Olney Address. Masengale came out of the Olney Address and went back and forth between the Camaro, the house, and the backyard. Individuals entered the Camaro for short periods of time or spoke to Bailey through the window of the vehicle. Officers observed nine suspected narcotics transactions between 9 a.m. and 1 p.m. on February 17, 2017.

[13]     Following the surveillance activities, officers checked past incident reports for the Olney Address. On January 31, 2016, officers responded to an alarm at the residence and discovered a large amount of marijuana, and a scale, pots, and pans with cocaine residue on them. On November 11, 2016, officers responded to the Olney Address in response to a possible heroin overdose, and an ambulance transported a female to the hospital. On December 22, 2016, officers responded to the Olney Address again in response to a possible heroin overdose. The officers

found a woman and administered Narcan,[8] and an ambulance transported her to the hospital. In addition to the surveillance described above, the officers conducted a trash pull on February 20, 2017, from the Old Stone Address, which revealed marijuana crumbs, drug paraphernalia, and mail addressed to both Bailey and Goins at the Olney Address and at the Old Stone Address.

[14] Officer Jerry Messer submitted a request for search warrant along with supporting affidavit on February 23, 2017, at 5:25 p.m. The clerk received the request for search warrant at 6:45 p.m. Commissioner John Boyce received and granted the request at 7:33 p.m. The search warrant authorized search of the premises of both the Old Stone Address and the Olney Address, as well as a 2008 White Chevy Silverado, a 2010 Blue Chevy Camaro, and a 2013 White Dodge Charger.

[15] On February 24, 2017, officers stopped Bailey at a gas station. The officers arrested Bailey and searched him. During the search, officers recovered 4.9 grams of fentanyl and $295. Officers also searched Bailey's Camaro and recovered clear plastic baggies and a scale. Officers then transported Bailey to the Old Stone Address. On the way, Bailey made an unprompted comment that he was in big trouble because there were drugs in the house. Bailey also notified officers that there was a key to the Old Stone Address located under the doormat. The officers used this key to gain access to the Old Stone Address. During the search, officers found heroin residue and suspected

---

[8] Narcan is a trademark for the drug naloxone hydrochloride. Narcan. (n.d.) *The American Heritage® Medical Dictionary*. (2007). Retrieved August 2, 2019, from https://medical-dictionary.thefreedictionary.com/Narcan The drug is used to treat opiate overdose and to reverse coma and respiratory depression. naloxone hydrochloride. (n.d.) *Medical Dictionary for the Health Professions and Nursing*. (2012). Retrieved August 2, 2019, from https://medical-dictionary.thefreedictionary.com/naloxone+hydrochloride

marijuana particles in the saddlebag of a motorcycle parked in the garage. The police searched the Dodge Charger at the Old Stone Address and found .67 grams of cocaine inside the vehicle. Police recovered $9,000 in cash inside the nightstand of the master bedroom, pictures of Bailey on top of the nightstand, and mail addressed to Bailey on the nightstand. In the kitchen, officers found 10.28 grams of marijuana, 27.6 grams of cocaine, and 12.99 grams of fentanyl. They also found plastic bags and lactose.[9]

[16] Subsequently, the State charged Bailey with several drug offenses including dealing in cocaine, dealing in a narcotic drug, possession of cocaine, possession of a narcotic drug, possession of methamphetamine, escape, possession of a controlled substance, dealing in marijuana, and possession of marijuana.[10] The State also sought a habitual offender enhancement based on Bailey's past convictions.

[17] On May 11, 2018, Bailey filed a motion to suppress the evidence gathered during the traffic stop on February 24, 2017, and during the searches of the Old Stone Address and the Olney Address, on the basis that the search warrant was issued without probable cause. The State entered the search warrant affidavit and the warrant into evidence at a hearing on the motion, and then both Bailey and the State submitted post-hearing briefs. Bailey argued in his post-hearing brief that the statements of the anonymous informant and of Troy Price were not demonstrated to be adequately reliable and that the information in the search warrant affidavit was stale and

---

[9] A sergeant with the Indiana State Police Drug Enforcement Section testified that lactose is a common ingredient used by drug dealers to dilute the efficacy of fentanyl and artificially increase the volume of the product.

[10] The State later dismissed the possession of methamphetamine, possession of a controlled substance, and dealing in marijuana charges.

conclusory. The trial court denied Bailey's motion to suppress. The trial court held the search warrant was supported by probable cause and, although the investigation began with an anonymous tip, the officers conducted a large surveillance operation that corroborated the information in the tip.

[18] The trial court held a two-day jury trial on August 14-15, 2018. The jury returned a verdict of guilty on all counts. The trial court entered judgments of conviction for Level 2 felony dealing in cocaine, Level 2 felony dealing in a narcotic drug, Level 6 felony possession of a narcotic drug, Level 6 felony escape, and Class B misdemeanor possession of marijuana.[11] Bailey admitted being a habitual offender, and the trial court enhanced his sentence for dealing in a narcotic drug. For these five convictions, Bailey received an aggregate sentence of forty years in the Department of Correction, and the trial court ordered these forty years be served consecutive to Bailey's sentence imposed under a separate cause number.

# Discussion

## Bailey's Search and Seizure Claims

[19] The trial court has broad discretion to rule on the admissibility of evidence, and we will reverse the trial court only upon finding an abuse of discretion. *Holloway v. State*, 69 N.E.3d 924, 929 (Ind. Ct. App. 2017), *trans. denied*. An abuse of discretion occurs when "admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id*. We will not reweigh the

---

[11] The trial court merged the possession of cocaine finding into the dealing in cocaine conviction to avoid a double jeopardy violation.

evidence and will resolve all conflicts in favor of the trial court's ruling. *Id*.
Nonetheless, the constitutionality of a search and seizure is a question of law, which
we review *de novo*. *Id*.

### *Bailey's Objections*

[20] Bailey objected to the searches of his person and his Camaro at the gas station and
the searches of the Old Stone Address and Olney Address via a motion to suppress
and at trial. As we have previously explained, "[i]n order to preserve an appellate
argument challenging the admission of evidence, a party must have made a
contemporaneous objection at trial, and the failure to object will result in waiver of
any alleged error." *Reed v. Bethel*, 2 N.E.3d 98, 107 (Ind. Ct. App. 2014). The
contemporaneous objection requirement applies even when the defendant filed a
pretrial motion to suppress. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g
denied*. In his Memorandum in Support of Motion to Suppress, Bailey challenges the
search warrant by asking rhetorically, "[w]as this the basis for the outright felony
arrest of the Defendant, four days later, prior to search warrant issuance, and without
the benefit of a judicially reviewed and issued arrest warrant? And so should that
arrest be redacted/struck/eliminated?" (Appellant's App. Vol. II at 119.)

[21] When Officer Bragg testified regarding the search of Bailey at the gas station, Bailey
objected to testimony about the search. The Court noted Bailey's objection and
overruled it. Bailey also objected to questioning about the fentanyl found during the
search and to additional testimony about the search, generally. Additionally, the
Court noted during a hearing outside the presence of the jury that it would treat its
denial of Bailey's motion to suppress as Defendant's ruling under Evidence Rule

103(B), which provides "[o]nce the court rules definitively on the record at trial a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Consequently, Bailey adequately preserved an objection to his arrest and to the subsequent searches for purposes of appeal because he raised the objection in a motion to suppress and objected at trial. *See Sullivan v. State*, 748 N.E.2d 861, 864-65 (Ind. Ct. App. 2001) (holding defendant preserved claim of error by objecting via a motion to suppress, incorporating his objections raised in the motion to suppress during trial, and entering a continuing objection at trial).

### *Arrest and Search of Bailey and His Vehicle at Gas Station*
### Fourth Amendment Analysis

[22] Individuals have a constitutional right against arbitrary search and seizure by law enforcement. The Fourth Amendment to the United States Constitution, as applied to the states by virtue of the Fourteenth Amendment, protects individuals from illegal searches and seizures by state actors. U.S. CONST. amend. IV; U.S. CONST. amend. XIV. Searches conducted without a warrant are *per se* unreasonable unless they fall into a few recognized exceptions. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind. Ct. App. 2000). These exceptions are strictly construed, and it is the State's burden to prove the warrantless search falls into one of the exceptions. *Id*. Evidence obtained without a warrant and in a circumstance that does not qualify as an exception to the warrant requirement is not admissible. *Holloway*, 69 N.E.3d at 930.

[23] Bailey argues the officers did not have a valid arrest warrant to stop his Camaro and take him into custody on February 24, 2017. Bailey notes the only arrest warrant in the record is dated February 25, 2017. However, law enforcement may conduct an investigatory stop with reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). "Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has or is about to occur." *Castner v. State*, 840 N.E.2d 362, 366 (Ind. Ct. App. 2006). Bailey argues the traffic stop and search of his person at the gas station was unconstitutional because there was no evidence in the record that a traffic violation occurred prior to the stop or that criminal activity was afoot. *See Clark v. State*, 994 N.E.2d 252, 266 (Ind. 2013) (holding officers did not have reasonable suspicion of criminal activity when they "encountered three men that they did not know, in a place where people are permitted to be, doing something completely in line with the expected activity at the location, at a time when people might be expected to be found there"). The State notes two police officers testified the police executed an arrest warrant on Bailey on February 24, 2017, and argues Bailey is asking us to reweigh the evidence.

[24] Initially, we note the search warrant issued on February 23, 2017, authorized the search of the Camaro that Bailey was driving when he was searched at the gas station prior to execution of the search warrant at the Old Stone Address. The search warrant affidavit requests the trial court issue a search warrant authorizing a search of the Old Stone Address, the Olney Address, and three vehicles, including

the 2010 Blue Chevrolet Camaro with an Indianapolis Colts plate. (State Ex. 1 at 18.) The search warrant itself authorized police

> to enter into and upon the described premises identified in the Search Warrant and Affidavit, and there diligently search for the described property detailed in the pages of this Search Warrant. And also to diligently search and to seize person(s) so described and identified in the Affidavit for Search Warrant.

(*Id.* at 25.) The search warrant affidavit specifically identified Bailey's Camaro as a vehicle to be searched and Bailey was the subject of the investigation that was described in the search warrant affidavit. Therefore, the stop and search of the Camaro was proper. *See State v. Foy*, 862 N.E.2d 1219, 1230 (Ind. Ct. App. 2007) (holding search warrant limited the discretion of the officers executing the warrant and permitting them to make a rational determination as to what items could properly be taken as potential evidence), *trans. denied*.

[25] While not acknowledged by the parties, we find Bailey's status as a person on home detention through community corrections to be relevant to his argument that his stop and search at the gas station violated the Fourth Amendment. *See Gonser v. State*, 843 N.E.2d 947, 950 (Ind. Ct. App. 2006) (stating "we will affirm the trial court's ruling on a motion to suppress if it is sustainable on any legal theory supported by the record, even if the trial court did not use that theory"). The community corrections contract Bailey signed required him to allow police to search him and his property based on reasonable suspicion of behavior violating the contract, such as possession of illegal drugs. Therefore, based on the information gathered during the police investigation, Bailey could be detained and searched without an arrest warrant. *See*

*State v. Schlechty*, 926 N.E.2d 1, 8 (Ind. 2010) (holding warrantless search of probationer's car was supported by a probation search term and reasonable suspicion that the defendant used car to commit stalking), *reh'g denied*, *cert. denied* 562 U.S. 1150 (2011).

## Article I, Section 11 Indiana Constitution

[26] Bailey also contends the stop of his vehicle at the gas station and the subsequent searches of his person and the vehicle violate Article I, Section 11 of the Indiana Constitution, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

This provision of the constitution protects Indiana residents from unreasonable police intrusion into the private areas of their lives. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001). As our Indiana Supreme Court has explained, this protection extends to searches of automobiles. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995). "Hoosiers regard their automobiles as private and cannot easily abide their uninvited intrusion." *Id*. at 80. However, a search warrant authorized the search of the Camaro, and Bailey agreed as a condition of community corrections to be subject to search upon reasonable suspicion that he violated the conditions of the program. Therefore, his rights under Article I, Section 11 of the Indiana Constitution were not violated. *See State v. Terrell*, 40 N.E.3d 501, 507 (Ind. Ct. App. 2015) (holding search

of probationer's nightstand did not violate the Indiana Constitution when probationer waived his search and seizure rights as condition of probation).

### *Validity of Search Warrant for the Olney Address and the Old Stone Address*

### Fourth Amendment

[27] Bailey argues the search warrant authorizing searches of the Olney Address and the Old Stone Address was not supported by probable cause because it "contains uncorroborated and unreliable hearsay upon which the trial court relied in issuing the search warrant." (Appellant's Br. at 30.)[12] Bailey notes that, pursuant to Indiana Code section 35-33-5-2, a search warrant affidavit must set forth facts known to the affiant through personal knowledge, or if based on hearsay, contain information regarding the reliability of the source or regarding the totality of the circumstances that corroborate the hearsay. A search warrant affidavit must link alleged drug activity with the premises to be searched. *Hensley v. State*, 778 N.E.2d 484, 487-88 (Ind. Ct. App. 2002). The search warrant affidavit must also comply with the statute. *Methene v. State*, 720 N.E.2d 384, 388 (Ind. Ct. App. 1999). "Attestations contained in a probable cause affidavit must be based upon fact and not merely conclusions of the affiant or a witness." *Id*. at 390. Probable cause does not exist if the supporting affidavit consists solely of uncorroborated hearsay. *Newby v. State*,

---

[12] Bailey also contests whether Commissioner Boyce reviewed the search warrant affidavit prior to issuing the warrant. He contends that, given the timestamps of when Commissioner Boyce received and when he granted the search warrant request, he did not review the supporting affidavit prior to issuing the search warrant. However, this argument invites us to make a factual determination, which is the province of the trier of fact not the appellate court. *In re R.C.*, 713 N.E.2d 285, 287 (Ind. Ct. App. 1999). We evaluate the issuance of the search warrant to see if it was supported by probable cause, which is our province to review. *See Cheever-Ortiz v. State*, 825 N.E.2d 867, 873 (Ind. Ct. App. 2005) (holding there was a substantial basis to determine probable cause existed to issue search warrant).

701 N.E.2d 593, 598 (Ind. Ct. App. 1998). An anonymous tip, standing alone, cannot support a finding of probable cause. *See McGrath v. State*, 95 N.E.3d 522, 527 (Ind. 2018). However, an officer can bolster the trustworthiness of a source of unknown credibility by including in the search warrant affidavit the basis of the informant's knowledge or facts obtained through independent police investigation that corroborate the source. *Id.*

[28] There are several ways an officer can demonstrate the trustworthiness of information in a search warrant affidavit. For example, hallmarks of trustworthiness include whether "(1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted." *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997). The magistrate is to make a practical, commonsense determination whether there is a fair probability that evidence of a crime or contraband will be found if the search warrant is issued. *Id.* at 181.

[29] Bailey argues the search warrant affidavit does not establish the credibility of the anonymous tipster, Troy Price, or Tiana Anderson, nor does the affidavit contain information corroborating the statements of these individuals. Bailey also argues the search warrant affidavit failed to establish a nexus between the Old Stone Address and suspected criminal activity. Bailey notes most of the surveillance described in the affidavit occurred at the Olney Address. Bailey acknowledges a trash pull at the Old Stone Address yielded a strong odor of marijuana, a needle cap and a plunger cap for a hypodermic needle, and a mixture of paper, a plastic bag, and electrical

tape. He argues this evidence is, however, insufficient to support a finding of probable cause.

[30] While an anonymous tip initiated the investigation and while statements by Price and Anderson are included in the search warrant affidavit, most of the information contained in the affidavit was obtained via surveillance and police investigation. Bailey drove cars registered to Goins to the Olney Address. Goins listed the Old Stone Address as her home address on her driver's license. Bailey also identified the Old Stone Address as his home address. Police stopped a woman after she left Bailey's Camaro at the Olney Address, and they found drugs and paraphernalia in her possession. Bailey's associates rushed another woman to a local firehouse to be treated for a heroin overdose shortly after she entered and left Bailey's Camaro. Officers also stopped Bailey's vehicle twice prior to issuance of the warrant. During these stops, police dogs indicated drugs were present in the car, but officers could not find the drugs. Moreover, officers found marijuana and drug paraphernalia when they conducted a trash pull at the Old Stone Address.

[31] Bailey analogizes his case to *Buford v. State*, where we held officers lacked probable cause for a residential search warrant to search for evidence of dealing premised on an uncorroborated anonymous tip about drug dealing out of a suspect's rental house. 40 N.E.3d 911, 916 (Ind. Ct. App. 2015). In *Buford*, the only allegation of dealing in the search warrant affidavit was based on the anonymous tip, and the affidavit did not contain any information corroborating the anonymous tip. *Id*. at 915. However, with regard to Bailey, even though the alleged drug dealing occurred away from the Old Stone Address, the totality of the evidence described in the search warrant

affidavit indicates the potential presence of evidence of a drug dealing operation at the Old Stone Address, including the items recovered in the trash pull at the Old Stone Address, Bailey's connection to the Old Stone Address and the Olney Address, Bailey's regular trips from the Old Stone Address to the Olney Address, Bailey's storage of various vehicles at the Old Stone Address, and Bailey's status on community corrections for a drug offense for which he was to be serving house arrest at the Old Stone Address. Consequently, the search warrant affidavit contained sufficient information to support a finding of probable cause that evidence of a crime would be found inside the Old Stone Address. *See Scott v. State*, 883 N.E.2d 147, 156 (Ind. Ct. App. 2008) (holding information provided by confidential informant was sufficiently corroborated by police investigation and defendant's recent history of methamphetamine manufacture to support issuance of search warrant authorizing search of defendant's home).

[32] Additionally, Bailey contends the information contained in the search warrant affidavit was stale. He notes the information in the search warrant affidavit alleging drug dealing activity was weeks to months old when the search warrant was issued and argues "[g]iven that the contraband alleged involved was drugs, which is highly mobile and, in some instances, readily ingested, such information was stale." (Appellant's Br. at 38.)

[33] The information contained in a search warrant affidavit must be timely. *Mehring v. State*, 884 N.E.2d 371, 377 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. A drug dealing operation consists of many items which are easily moveable, which can potentially render information contained in a search warrant affidavit stale. *See*

*Owens v. United States*, 387 F.3d 607, 608 (7th Cir. 2004) (finding ninety-day-old information regarding drug sale referenced in probable cause affidavit was stale). "The general rule is that stale information cannot support a finding of probable cause, but rather, only gives rise to mere suspicion." *Seeley v. State*, 782 N.E.2d 1052, 1060 (Ind. Ct. App. 2003), *trans. denied*, *cert. denied* 540 U.S. 1020 (2003). Nevertheless, the exact moment information becomes stale cannot be precisely determined. *Id.* We must look to the facts and circumstances of each case to determine whether the facts and information contained in the search warrant affidavit are stale. *Mehring*, 884 N.E.2d at 377. For instance, evidence of an ongoing criminal operation is not necessarily stale just because it is weeks or months old. *Id.* at 380 (holding ten-month-and-nineteen-day delay between when FBI agent downloaded child pornography images from defendant's IP address to when local police officer applied for search warrant did not render the information in the search warrant stale).

[34] The State contends the information in the search warrant affidavit was not stale because it was evidence of an ongoing criminal operation. The police conducted surveillance for a period of approximately four months and observed evidence of ongoing, regular drug selling activity during the entire investigation. While a user will likely consume drugs shortly after obtaining them, a dealer will likely maintain an inventory and regular supply of drugs to sell.[13] The observations consistently linking Bailey to suspected drug dealing activity, even if weeks or months old,

---

[13] At trial, Sergeant Shafer testified that users of cocaine, heroin, and fentanyl usually do not possess large quantities of drugs because they tend to ingest the drugs shortly after obtaining them. In contrast, dealers will tend to have larger quantities of drugs. (*See* Tr. Vol. III at 56-60.)

supports the likelihood that he possessed drugs at the time the warrant was issued. Thus, we hold the search warrant affidavit demonstrated evidence of an ongoing criminal operation and therefore was not based on stale information. *See Shell v. State*, 927 N.E.2d 413, 419 (Ind. Ct. App. 2010) (holding search warrant was not based on stale information even though trash pull occurred three weeks after confidential informant relayed information).

### Article I, Section 11 Indiana Constitution

[35]     Bailey argues the searches of the Olney Address and Old Stone Address violated his rights under the Indiana Constitution for the same reasons he argues they violated his Fourth Amendment rights. The Indiana Constitution protects Hoosiers from unreasonable searches and seizures. *Litchfield v. State*, 824 N.E.2d 356, 359-60 (Ind. 2005). The reasonableness of the search is evaluated by looking at the totality of the circumstances and "requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id*. at 360. This inquiry generally requires balancing "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id*. at 361. The information officers gathered in the course of their surveillance operation demonstrated a high degree of concern or suspicion that Bailey was involved in a drug dealing operation. Therefore, while the searches of the Olney Address and the Old Stone Address were highly intrusive, law enforcement had a strong need to search the addresses because they likely contained evidence of a criminal operation.

*See Carter v. State*, 105 N.E.3d 1121, 1131 (Ind. Ct. App. 2018) (holding search of cell phone pursuant to search warrant was reasonable under the totality of the circumstances and did not violate the Indiana Constitution), *trans. denied.*

### *Admission of Search Warrant Affidavit into Evidence*

[36]    Bailey raises several arguments on appeal related to admission of the search warrant affidavit.  He contends the affidavit should not have been admitted because it contained hearsay, evidence of uncharged criminal conduct, and statements of individuals Bailey did not have the opportunity to cross-examine.  The State argues the search warrant affidavit was not admitted for the purpose of proving the truth of the matters asserted within it, and therefore, no hearsay violation occurred.  Rather, the State contends, the affidavit was admitted to demonstrate the police obtained a search warrant before conducting the search.  The State also notes that it did not ask the jury to convict Bailey based on the statements contained in the search warrant affidavit.

[37]    Initially, we note that it is unclear from the record and counsels' statements during oral argument whether the search warrant affidavit was published to the jury.  Officer Messer testified about Bailey's arrest and the search of the Old Stone Address.  The search warrant and accompanying affidavit were admitted as Exhibit 1 during his testimony.  (Tr. Vol. II at 198.)  However, the State did not move to publish the search warrant and supporting affidavit to the jury after it was admitted.  With the other exhibits, the State moved to publish the exhibits shortly after they were admitted.  For example, the State moved to publish Exhibits 10, 11, 12, and 13, photographs of the Camaro, shortly after the photographs were admitted.  (*Id.* at

204.)   Therefore, the State's decision to not move to publish Exhibit 1 would seem to indicate the exhibit was never viewed by the jury.

[38]   However, some of the trial court's instructions to the jury indicate the jury would have a chance to view all exhibits.  For example, the trial court instructed the jury prior to opening statements:

> And then the last thing is that I've mentioned in the instructions about exhibits, some of them may be published as we go along for you to look at.  If there are exhibits that are not published, we do have an opportunity at the end of trial where those exhibits are available for you to look at.  So, don't be thinking you missed something.  They will be, um, published at the end if they're not published during the pendency.

(*Id*. at 187.)  And, at the close of the State's presentation of evidence, the trial court explained to the jury:

> Members of the jury, um, at this time as you can see the State has set out all of the exhibits that had been admitted and, um, requested published.  This is your opportunity to review any of those exhibits at—any of those exhibits as you deem appropriate or as you wish. You certainly do not have to get up.  You do not have to look at anything, but these exhibits do not, as you can imagine, go back in the jury room with you.  Uh, so this is your opportunity to review them, the pictures and so forth.

(Tr. Vol. III at 67.)  While the State did not request publication of Exhibit 1 after it was admitted, the record does not indicate whether Exhibit 1 was laid out for the jury to review.

[39] Nevertheless, we evaluate whether admission of the affidavit amounts to harmless error. Even if a trial court abuses its discretion in admitting evidence, "we will only reverse for that error if the error is inconsistent with substantial justice or if a substantial right of the party is affected." *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *reh'g denied*, *trans. denied*. The defendant must show that he was prejudiced by the erroneous admission. *Lewis v. State*, 34 N.E.3d 240, 248 (Ind. 2015). We will hold the erroneous admission of evidence to be harmless error "if we are satisfied that the conviction is supported by such substantial independent evidence of guilt that there is little likelihood the challenged evidence contributed to the conviction." *Corbally v. State*, 5 N.E.3d 463, 470 (Ind. Ct. App. 2014).

[40] A community corrections officer testified that Bailey was in community corrections at the time of the searches and Bailey listed the Old Stone Address as his home with community corrections. Bailey was not allowed to possess narcotics while in community corrections. Nonetheless, officers discovered marijuana residue, cocaine residue, and heroin residue in the saddle bag of a motorcycle and cocaine in a Dodge Charger parked inside the Old Stone Address' garage. Officers also found cocaine, marijuana, and fentanyl inside a kitchen drawer in the Old Stone Address. Bailey also possessed fentanyl when he was searched at the gas station. In total, officers recovered over twenty-eight grams of cocaine and over seventeen grams of fentanyl. Additionally, officers recovered several items that, while innocuous in and of themselves, are indicative of drug dealing: lactose in the kitchen of the Old Stone Address, large amounts of US currency, scales, and plastic bags. Considering the overwhelming evidence of Bailey's guilt, if the search warrant affidavit was

published, it amounts to harmless error, at most. *See Guajardo v. State*, 496 N.E.2d 1300, 1303 (Ind. 1986) (holding that allowing the jury to see search warrant and probable cause affidavit amounted to harmless error because of the overwhelming evidence identifying the defendant as the perpetrator).

## Sufficiency of the Evidence

[41] In assessing whether there was sufficient evidence to support a conviction, we consider the probative evidence in the light most favorable to the verdict. *Burns v. State*, 91 N.E.3d 635, 641 (Ind. Ct. App. 2018). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). "Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict." *Burns*, 91 N.E.3d at 641 (internal citation omitted).

[42] Bailey contends the State presented insufficient evidence to demonstrate he constructively possessed the illegal drugs found at the Old Stone Address.[14] To prove a defendant possessed contraband, the State is required to prove either actual or constructive possession. *Eckrich v. State*, 73 N.E.3d 744, 746 (Ind. Ct. App. 2017),

---

[14] Bailey also argues that if the evidence obtained during the gas station search and the search of the Old Stone Address is suppressed, then there is insufficient evidence to support his convictions. He also notes that if his convictions are reversed, the habitual offender finding must likewise be reversed due to the lack of any felony conviction to which it can attach. *See* Ind. Code § 35-50-2-8. However, as we held above, the evidence obtained during the gas station search and the search of the Old Stone Address should not have been suppressed. Therefore, his argument fails.

*trans. denied*. "Actual possession occurs when a person has direct physical control over an item. Constructive possession occurs when a person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Id*. (internal citation and quotation marks omitted). When a person has exclusive possession of the premises in which contraband is found, he is assumed to know about the presence of the contraband and be capable of controlling it. *Harrison v. State*, 32 N.E.3d 240, 248 (Ind. Ct. App. 2015), *trans. denied*. However, when possession of the premises is not exclusive, the State must show additional circumstances that indicate the defendant's knowledge of the presence of the contraband and ability to control it. *Id*. Such additional circumstances include incriminating statements by the defendant, attempted flight, a drug manufacturing setting, proximity of the defendant to the drugs, drugs being found in plain view, and the location of the drugs in proximity to items owned by the defendant. *Goffinet v. State*, 775 N.E.2d 1227, 1230 (Ind. Ct. App. 2002), *trans. denied*; *Speer v. State*, 995 N.E.2d 1, 10 (Ind. Ct. App. 2013), *trans. denied*.

[43] Bailey argues the State failed to prove constructive possession of the drugs found in the Old Stone Address. He argues the State failed to link the motorcycle and the Dodge Charger found at the Old Stone Address to him. Further, he notes that he did not have exclusive access to the Old Stone Address. Goins and two children also lived at the Old Stone Address, and a key to the house was kept under a doormat.

[44] However, Bailey lived at the Old Stone Address. He told Marion County Community Corrections that he lived at the Old Stone Address. Officers discovered mail addressed to him at the Old Stone Address and pictures of Bailey were at the

Old Stone Address. Marijuana, cocaine, and fentanyl were found in a kitchen drawer inside the house, not in a hard-to-reach location. Lactose, a cutting agent, was found on a counter near the drugs. Large sums of cash were found in a nightstand with pictures of Bailey and Goins on top of the nightstand. The motorcycle and Dodge Charger where marijuana, heroin, and cocaine were found were in the garage of the Old Stone Address. When Bailey was searched at the gas station, he possessed fentanyl, $295 in US currency, plastic bags, and a scale. Additionally, he made an unprompted comment on the way to the Old Stone Address about there being a lot of drugs in the house. Given all these facts, a jury could reasonably determine Bailey had the capability and intent to maintain possession and control of the controlled substances found at the Old Stone Address. *See Gray v. State*, 957 N.E.2d 171, 176 (Ind. 2011) (holding evidence was sufficient to support finding defendant constructively possessed marijuana when bag of marijuana was found underneath a coffee table in a common room).

## Prosecutorial Misconduct

[45] If a defendant objects at trial and asserts a claim of prosecutorial misconduct, "we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). We consult case law and the Indiana Rules of Professional Conduct to determine whether a prosecutor's argument amounts to prosecutorial misconduct. *Id*. We assess the degree of peril by looking at "the

probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct." *Id*.

[46] When a claim of prosecutorial misconduct is not properly preserved, "the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error." *Id*. "Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes 'a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process.'" *Id*. (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)). The resulting harm or potential for harm must be substantial. *Davis v. State*, 835 N.E.2d 1102, 1107 (Ind. Ct. App. 2005), *trans. denied*. We assess harm by looking at "whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for ascertainment of truth to which he would have been entitled." *Id*. at 1107-08.

[47] Bailey argues the deputy prosecutors committed substantial misconduct during closing arguments. A prosecutor cannot request a jury convict a defendant for any reason other than the defendant's guilt, nor may the prosecutor phrase a final argument in a manner calculated to inflame the passions or prejudice of the jury. *Jerden v. State*, 37 N.E.3d 494, 499 (Ind. Ct. App. 2015). The State referenced the weight of fentanyl found at the Old Stone Address and on Bailey's person and the number of potential lethal doses that could be supplied. (Tr. Vol. III at 84-85) ("a milligram, .001 grams of fentanyl can cause an overdose, he has 18,000 chances of somebody [overdosing], not only on his person but in his house"); (*id*. at 88-89) ("he

had 5 grams on him. It was actually 4.94. So that's 494, or 4,940 potential overdoses").

[48] Bailey did not object to these comments during trial but argues on appeal that they constitute fundamental error. He contends the State misstated the evidence to spark outrage and inflame the passions of the jury. An officer testified that "potentially milligrams" or approximately .01 grams of pure fentanyl could kill someone depending on the person's tolerance level, dependency, and other considerations. (*Id.* at 59.) Therefore, the State inaccurately represented that .001 grams of fentanyl could result in a fatal overdose. Additionally, Bailey points to the State's comment that Bailey had "$13,000 laying around" when less than $10,000 was recovered during Bailey's arrest and the search of the Old Stone Address. (*Id.* at 88.) Also, during closing, the deputy prosecutor said "[w]e caught him before he can deal. We caught him before he could give any lethal doses to using citizen [sic] in this community." (*Id.* at 89.) Bailey argues these comments "conveyed to the jury that Bailey was a would-be mass murderer from whom the jury could protect society through guilty verdicts." (Appellant's Br. at 58-59.) He contends the comments placed him in grave peril because they encouraged the jury to adopt an "us" versus "him" mentality. (*Id.* at 59.)

[49] The deputy prosecutors misstated the amount of cash recovered at the Old Stone Address and the number of potentially lethal doses that could be derived from the fentanyl recovered from Bailey's person and the Old Stone Address. However, these statements appear to be inadvertent mistakes rather than calculated attempts to inflame the passions of the jury. Further, any error was not so egregious as to

constitute fundamental error. The comments were limited in nature and the record contains substantial evidence of Bailey's guilt. *See Gregory v. State*, 885 N.E.2d 697, 707 (Ind. Ct. App. 2008) (holding prosecutor's statements about the disastrous effects methamphetamine has on the community did not constitute misconduct), *trans. denied*.

# Conclusion

We conclude Bailey's rights under both the United States and the Indiana Constitutions were not violated when he and his vehicle were stopped and searched. Further, the warrant authorizing the search of the Old Stone Address and the Olney Address was supported by probable cause. There was sufficient evidence of guilt in the record to support the jury's verdict. Lastly, the prosecutor's comments during closing argument do not amount to fundamental error. Therefore, we affirm the trial court.

Affirmed.

Baker, J., and Robb, J., concur.